*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| MEGAN PATRICK, | ) | |
| | ) | Supreme Court No. S-14360 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-10-05483 CI |
| v. | ) | |
| | ) | O P I N I O N |
| MUNICIPALITY OF ANCHORAGE, | ) | |
| ANCHORAGE TRANSPORTATION | ) | No. 6798 - July 19, 2013 |
| COMMISSION, | ) | |
| | ) | |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Fred Torrisi, Judge.

Appearances: Charles W. Coe, Law Office of Charles W. Coe, Anchorage, for Appellant. Dean T. Gates, Assistant Municipal Attorney, and Dennis A. Wheeler, Municipal Attorney, Anchorage, for Appellee.

Before: Carpeneti, Chief Justice, Fabe, Winfree, and Stowers, Justices.

CARPENETI, Chief Justice.

## I.      INTRODUCTION

A taxi driver was cited for driving with a suspended chauffeur's license. She asserted that she was not driving the cab on the night in question. Because she had several other violations her license was revoked under the relevant municipal code. The taxi driver filed a timely appeal to contest the revocation of her license. An evidentiary

hearing was held and the hearing officer forwarded a proposed decision to The transportation commission, recommending that the license revocation should be upheld. The transportation commission adopted the hearing officer's proposed decision. The taxi driver appealed to the superior court, arguing that the revocation was in error and that her due process rights were violated. The superior court affirmed the Commission. The taxi driver reiterates these arguments on appeal before us. Because the taxi driver's due process rights were not violated and there is sufficient evidence to revoke her license, we affirm.

## II. FACTS AND PROCEEDINGS

### A. Facts

Megan Patrick held chauffeur's license number 7880. On May 5, 2009, the Anchorage Transportation Commission suspended her license because she failed to pay fines arising from two prior traffic violations. Patrick asserted that she failed to pay the fines or otherwise appeal them because the transportation inspector advised her that no action would be taken against her license. Patrick sought to file an appeal regarding the previous violations but it was rejected as untimely. She then appealed to the superior court, in *Patrick v. Municipality of Anchorage*,[1] arguing that she should have been allowed an opportunity to show good cause for her late appeal. The superior court agreed. During the pendency of the appeal, Patrick did not seek to stay the suspension or revocation. Her chauffeur's license was later revoked in part due to these violations.

The present case arises from the revocation of Patrick's license following an incident on May 22, 2009. The actual events are vigorously disputed by the parties. It is agreed that Patrick was cited for driving with a suspended license because she was operating a taxicab without a current, valid chauffeur's license. The ticket was issued

---

[1]     No. 3AN-09-08829 CI (Alaska Super., Dec. 15, 2010).

after a fellow taxi driver, who knew Patrick's license was suspended, saw her driving a taxi and called dispatch to report that she was driving cab 131 at the airport. The cab was signed in to the dispatch system under the name of Baltazar Arias, but he was not driving the cab.[2] Patrick testified that her friend Claire Goldsmith was driving the cab that night. Patrick suggested that Goldsmith use Arias's sign-in since Arias wanted hours counted towards a new permit. The dispatcher deauthorized the sign-in and called the owner of the taxi, Julio Guerro.[3] Guerro then called Patrick and requested that she park the vehicle.[4]

Patrick was issued a citation. Because of the previous violations she was considered a "chronic violator"[5] and her license was revoked on June 4, 2009. Prior to the revocation, Patrick had several conversations with Brent Fraser, the transportation inspector, in which she claimed she had not been operating the taxi and had been

---

[2]       Each driver has a unique sign-in that allows the driver to receive dispatches; drivers must sign on at the beginning of their shifts and sign off at the end. Claire Goldsmith, who claimed to be the person actually driving the cab that evening, testified that she used Baltazar's sign-in because her own sign-in was inactive.

[3]       Guerro owned cab 131. He usually drove it during the day but leased it to other drivers during evening shifts.

[4]       Patrick does not dispute that Guerro called her and asked her to park the car, but she claims she forwarded the message to Goldsmith, who she claims was actually driving the car.

[5]       Anchorage Municipal Code (AMC) 11.10.110(A)(4) provides in relevant part:

> The transportation inspector may suspend or revoke the chauffeur's license of a chronic violator. As used in this section, "chronic violator" means a chauffeur for which four citations have been issued during a period of 12 consecutive months . . . . Citations which have been dismissed on appeal do not count towards the sum of the four citations.

working a different job that evening. She produced no documentation indicating that she had been working elsewhere.[6] Her license was revoked and she requested an administrative hearing to review the revocation.

## B. Anchorage Municipal Code Background

The administrative proceedings were governed by the Anchorage Municipal Code (AMC) provisions relating to the Anchorage Transportation Commission, which regulates vehicles for hire.[7] The transportation inspector investigates and enforces these regulations.[8] When a taxi driver is issued a citation, notice and appeal procedures are provided by the Commission: Once a citation is issued, the driver has 15 days to file an appeal requesting a hearing in front of "the chairman of the commission or his or her designee" (a hearing officer).[9] Pursuant to AMC 11.10.030(D), Patrick's appeal was held before a hearing officer, who accordingly had the power to

> conduct hearings, to make rulings regarding the admission of evidence and procedure, and to prepare a proposed decision, with findings of facts and conclusions of law, which may be adopted by the designated member of the [Transportation Commission] charged with making such decisions under this section. The designated member of the commission may adopt the hearing officer's decision or decide the matter himself or herself based upon the record.

---

[6] Patrick testified that her supervisor and a friend called the transportation inspector to inform him that she had been at work that evening, but he would not consider the calls.

[7] AMC 11.10.030(A).

[8] AMC 11.10.070, .090, .110.

[9] AMC 11.10.100(E).

Once the transportation commissioner adopts the hearing officer's decision or makes an independent decision, the driver may appeal to the superior court within 30 days.[10]

When a chauffeur's license has been revoked for a reason set out in AMC 11.10.110(A),[11] a similar procedure is available under AMC 11.10.100(C).[12] However, in the case of a revocation, the commissioner not only may adopt the hearing officer's decision or independently decide the issue under AMC 11.10.030(D), but pursuant to AMC 11.10.100(C) also may

> authorize the conditional or unconditional issuance or reinstatement of a denied, suspended, or revoked license upon an affirmative showing at a hearing by the appellant that he or she has been rehabilitated and has the ability to assume the responsibilities of a chauffeur, or that the transportation inspector exceeded his or her authority, or that continued suspension of or refusal to issue or reinstate the license would otherwise work a substantial injustice.

The decision may then be appealed to the superior court.[13]

### C.    Proceedings

After she received the citation, Patrick had numerous conversations with the transportation inspector, who ultimately revoked her license. She then requested and

---

[10]    AMC 11.10.100(D).

[11]    AMC 11.10.110(A) contains several justifications for revoking a chauffeur's license, including, as relevant here, being a "chronic violator."

[12]    AMC 11.10.100(C) provides:

> A person aggrieved by the denial, suspension, or revocation of a chauffeur's license . . . may, within 15 days of the denial, suspension, or revocation decision . . . appeal that decision to the chairman of the commission or his or her designee.

[13]    AMC 11.10.100(D).

was given an administrative hearing. At that hearing, both Patrick and the transportation inspector presented evidence regarding the events of May 22. Following the hearing the hearing officer submitted a proposed decision, which concluded that Patrick was driving the taxi that evening and recommended affirming her license revocation; the commissioner adopted the decision. Patrick appealed to the superior court and asserted that the procedures followed in her case violated her due process rights. Superior Court Judge Fred Torrisi affirmed the Commission's decision; he concluded that, on the facts presented, no due process violation had occurred.

Patrick appeals, arguing that the Commission's decision must be overturned because there was insufficient evidence to prove that she was driving the taxi on the night of May 22. She also argues that the municipal license revocation process violated her due process rights, notably by revoking her license without a hearing, and by failing to provide her notice and an opportunity to respond to the hearing officer's proposed decision before the Commission adopted the findings. Finally, she argues that the Commission and the superior court erroneously considered her prior tickets that were still in the appeals process.

## III.    STANDARD OF REVIEW

"When the superior court acts as an intermediate court of appeal in an administrative matter, we independently review and directly scrutinize the merits of the [administrative] decision."[14] We apply a four-part standard, using "(1) the substantial evidence test for questions of fact; (2) the reasonable basis test for questions of law involving agency expertise; (3) the substitution of judgment test for questions of law

---

[14]    *Kingik v. State, Dep't of Admin., Div. of Ret. & Benefits*, 239 P.3d 1243, 1247-48 (Alaska 2010) (alteration in original).

where no expertise is involved; and (4) the reasonable and not arbitrary test for review of administrative regulations."[15]

Because Patrick challenges the Commission's findings of fact, this case implicates the substantial evidence test. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support the . . . conclusion."[16] "We determine only whether such evidence exists and do not choose between competing inferences or evaluate the strength of the evidence."[17] Whether there was a violation of due process is a question of law, which we review de novo.[18]

## IV. DISCUSSION

### A. The Superior Court Did Not Err In Affirming The Commission's Finding That Patrick Was Driving The Taxi On The Night Of May 22.

Patrick argues that the Commission's decision that she was driving the taxi must be overturned because it is not supported by sufficient evidence. She argues that the hearing officer, and by extension the Commission, did not properly value the evidence she presented, that the superior court relied too heavily on the hearing officer's

---

[15]    *Griswold v. City of Homer*, 252 P.3d 1020, 1025 (Alaska 2011).

[16]    *Lopez v. Adm'r, Pub. Emps. Ret. Sys.*, 20 P.3d 568, 570 (Alaska 2001) (quoting *Hester v. State, Pub. Emps. Ret. Bd.*, 817 P.2d 472, 476 (Alaska 1991)).

[17]    *Id.*

[18]    *D.M. v. State, Div. of Family & Youth Servs.*, 995 P.2d 205, 207 (Alaska 2000).

credibility determination,[19] and that the superior court failed to analyze why her evidence was rejected but the transportation inspector's evidence was accepted as true.

We conclude that the superior court properly affirmed the Commission's decision. In this case, the factual findings rely heavily on the credibility of the witnesses, which is properly determined by the hearing officer.[20] We have held that "it is not our task on review to reweigh [credibility decisions]."[21] Rather, we review the Commission's factual determination to ensure that it is based upon substantial evidence, that is, "evidence that a reasonable mind might accept as adequate to support a conclusion.[22]

The conclusion that Patrick was driving the cab is supported by substantial evidence. The fact that there was conflicting testimony does not mean that the transportation inspector failed to prove that Patrick was driving the taxi that evening. It means the hearing officer needed to weigh the evidence and make a credibility assessment of the witnesses. He did so. Although not required to make extensive findings of fact regarding conflicting witness testimony,[23] the hearing officer articulated

---

[19]    Patrick suggests that when the superior court considered the credibility of the witnesses it made a credibility determination. The context in which the superior court discussed the credibility of the witnesses was when Patrick raised the issue of the inconsistency of the witness statements and the superior court remarked that Patrick's witnesses' credibility was undermined by their actions.

[20]    *West v. Municipality of Anchorage*, 174 P.3d 224, 230 (Alaska 2007).

[21]    *Id.* (quoting *Whaley v. Alaska Workers' Comp. Bd.*, 648 P.2d 955, 958 (Alaska 1982)).

[22]    *Id.* (quoting *Whaley*, 648 P.2d at 958).

[23]    *Whaley*, 648 P.2d at 958 (explaining that there is less need for extensive findings of fact regarding witness credibility because credibility decisions are not
(continued...)

his reasons for crediting the transportation inspector's witnesses over Patrick's. These reasons are borne out in the record and there is more than enough evidence for a reasonable mind to find that Patrick was driving the taxi.

The transportation inspector presented several drivers who stated that they saw Patrick driving cab 131 on May 22. Felix Saavadra, the driver who reported the incident to dispatch, testified that he saw Patrick in line at the airport pick-up area, where passengers were getting into the cab, and in another part of town with the light off, indicating she was carrying passengers. Mexhit Limani also testified that he saw Patrick at the airport, they chatted, and she complained about dispatch and told him she was driving cab 131. Finally, Guerro, the taxicab owner, testified that, after he received a call from dispatch regarding Patrick driving the cab with a suspended license, he called her and she sounded alarmed and did not deny driving the cab. This evidence supports the finding that Patrick was driving the cab.

On the other hand, Patrick's evidence consisted of the testimony of (1) a very close friend, (2) her brother, and (3) a cab driver who admitted he had not remembered the date without prompting from a lawyer, as well as Patrick's statement that she had worked another job that night. The testimony supported Patrick's position that she was not driving the taxi. However, Patrick failed to present credible documentation that she worked for another employer, failed to deny driving the cab when Guerro called, and alleged that she told Goldsmith to sign into the cab under another driver's name unlawfully. The transportation inspector's evidence came from presumably unbiased sources, including two drivers who were friendly with Patrick, and

---

**23**    (...continued)
reweighed on appeal).

Patrick presented no evidence that the drivers had any reason to lie or were mistaken in their testimony.

We conclude that substantial evidence supports the finding that Patrick was driving the taxi. Accordingly, the superior court did not err in affirming the Commission on this issue.

### B. Due Process And Taxi License Revocation

The Alaska Constitution provides that "[n]o person shall be deprived of life, liberty, or property, without due process of law,"[24] and the United States Constitution provides similar protection.[25] We have held that "[t]he crux of due process is [the] opportunity to be heard and the right to adequately represent one's interests."[26] There is no dispute that Patrick was entitled to due process in regards to her taxi license revocation hearings. Thus, we focus on whether the procedure afforded her was sufficient to meet due process dictates. Patrick contends that several aspects of the Transportation Commission's procedure surrounding license revocation violated her due process rights.

### 1. The superior court did not err in finding that there was no due process violation when the transportation inspector revoked Patrick's taxi license after she received the final citation.

Patrick argues that her due process rights were violated when the transportation inspector revoked her license, based on his classification of her as a chronic violator, without notice or a pre-revocation hearing. The Municipality of

---

[24]    Alaska Const. art. I, § 7.

[25]    U.S. Const. amend. XIV, § 1.

[26]    *D.M. v. State, Div. of Family & Youth Servs.*, 995 P.2d 205, 213-14 (Alaska 2000) (quoting *Matanuska Maid, Inc. v. State*, 620 P.2d 182, 192 (Alaska 1980)) (internal quotation marks omitted).

Anchorage argues that the existing procedures are sufficient to "establish a reliable 'initial check against mistaken decisions,' " which is all that is required to satisfy due process. We agree with the Municipality.

"Due process requires that any action involving deprivation of life, liberty or property by adjudication must be preceded by notice and opportunity for hearing appropriate to the nature of the case."[27] Patrick argues that she did not have notice that her chauffeur's license would be revoked. This is incorrect. Patrick was cited on May 22, 2009, for violating the terms of her license suspension and the transportation inspector notified her that revocation of her license was being considered on May 26. Revocation did not occur until June 6, after several conversations between Patrick and the transportation inspector. We thus conclude that Patrick received notice prior to the revocation of her license.

Patrick next argues that she did not receive a pre-revocation hearing. We interpret this as an argument that Patrick was entitled to a full evidentiary hearing before her license could be revoked. The Municipality contends that because there are significant public safety concerns with taxi drivers who do not adhere to regulations, due process does not require a formal, pre-revocation evidentiary hearing.

Due process does not require any specific type of hearing. The necessary opportunity to be heard depends on the nature of the case; it is "not fixed in form."[28] We

---

[27] *Philip J. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 264 P.3d 842, 846 (Alaska 2011) (quoting *In re Estate of Fields*, 219 P.3d 995, 1009 (Alaska 2009)) (alteration omitted).

[28] *Boddie v. Connecticut*, 401 U.S. 371, 378-79 (1971).

look to the test set forth by the United States Supreme Court in *Mathews v. Eldridge*[29] to determine the requirements of due process:

> [The] identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.[30]

The revocation of a taxi license deprives Patrick of her means of support. She is therefore entitled to some form of hearing appropriate to the circumstances *before* revocation,[31] absent an emergency situation or a public safety concern requiring summary action.[32] Although the government has a high interest in regulating taxi

---

[29]    424 U.S. 319 (1976).

[30]    *Id.* at 335; *see also D.M.*, 995 P.2d at 212 (relying on *Mathews* balancing test to determine requirements of due process).

[31]    *Gottstein v. State, Dep't of Natural Res.*, 223 P.3d 609, 622 (Alaska 2010) ("[D]ue process requires notice and an opportunity to be heard prior to governmental deprivation or infringement of valuable property rights . . . .") (citing *Heitz v. State, Dep't of Health & Soc. Servs.*, 215 P.3d 302, 305 (Alaska 2009)).

[32]    *Graham v. State*, 633 P.2d 211, 216 (Alaska 1981) ("We have consistently held that before the state may deprive a person of a protected property interest there must be a hearing, except in emergency situations, as where a debtor is about to transfer or conceal property in order to defraud creditors, or where 'the public health, safety, or welfare require summary action.' ") (citations omitted); *see also Hoffman v. State, Dep't of Commerce & Econ. Dev.*, 834 P.2d 1218, 1219 (Alaska 1992) ("Even when emergencies allow the State to seize property before a hearing, due process requires the State to provide an opportunity for a post-seizure hearing at a meaningful time to

(continued...)

-12-                                                                                              6798

drivers, this does not appear to have been an emergency situation in which Patrick posed an immediate threat; thus, some level of review was necessary before her license was revoked.

But we conclude that the procedures in place provided adequate review for the purposes of due process. Lack of a full pre-revocation evidentiary hearing could theoretically cause an erroneous revocation of a chauffeur's license, but the "probable value" of providing such a hearing is small. The transportation inspector does not automatically revoke licenses — he is charged with *investigating* violations of the code.[33] Through this investigation, Patrick had an opportunity to respond to the evidence against her, albeit in an informal setting. The transportation inspector's letter revoking her license stated that she "[had] previously been made aware of the allegation that [she] operated taxicab #131," after which she had several conversations with the transportation inspector prior to the revocation. In those conversations he requested that she provide some evidence to support her contention that she was not driving the taxicab. Patrick failed to do so. This informal contact with the affected driver and investigation into the citation shows the flexible and ongoing nature of the process and satisfies the dictates of due process.[34] It provided Patrick a meaningful opportunity to contest the veracity of the citation.[35]

---

[32]    (...continued) minimize possible injury.") (citing *F/V American Eagle v. State*, 620 P.2d 657, 666-67 (Alaska 1980)).

[33]    AMC 11.10.070(C).

[34]    *See Goldberg v. Kelly*, 397 U.S. 254, 269 (1970) ("Informal procedures will suffice . . . .").

[35]    In the public employment context, an employee is not entitled to a full scale (continued...)

Finally, although Patrick contends that her receipt of the Commission's ruling seven months after revocation was not sufficiently prompt, she cites no authority for the proposition and, in light of the protections provided to her, we do not find seven months to be an unduly long time.  And the availability of a post-deprivation hearing further supports our conclusion that Patrick's due process rights were not violated.[36]  In sum, we conclude that Patrick's due process rights were not violated when the transportation inspector revoked her license after she received the final citation.

>    **2.    The superior court did not err in finding that there was no due process violation when the hearing officer submitted a report and it was accepted by the Commission.**

Patrick next argues that the process by which the hearing officer submits a report and the Commission accepts or rejects the report is a violation of due process.  Specifically, she argues that she is entitled to a copy of the hearing officer's report and the opportunity to respond to that report.  Additionally, she claims she was entitled to notice that the Commission was going to meet and decide her appeal so that she could present evidence to refute the hearing officer's recommendation.  She claims that the process in place prevented her from challenging any erroneous findings in the hearing officer's report and the revocation of her license based on tickets that were being

---

[35]    (...continued)
evidentiary forum prior to termination but is entitled to "oral or written notice of the charges against him, an explanation . . . and an opportunity to present his side of the story."  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985); *City of N. Pole v. Zabek*, 934 P.2d 1292, 1297 (Alaska 1997).

[36]    *See Cleveland Bd. of Educ.*, 470 U.S. at 547-48 ("We conclude that all the process that is due is provided by a pretermination opportunity to respond, coupled with post-termination administrative procedures . . . ."); *see also City of N. Pole*, 934 P.2d at 1298 ("A failure to provide sufficient pre-termination process may be corrected by a curative post-termination hearing in which due process is provided.").

appealed. The Municipality admits that there is no other hearing after the hearing officer submits a report to the Commission but argues that none is required. It argues that the process does not violate due process and that Patrick mischaracterizes the Commission's role by asserting that it (1) makes the actual decision to revoke her license when in fact it is part of an appeals process beginning with the hearing officer; and (2) meets as a commission to review the hearing officer's recommended decision.

Patrick argues that there is a due process right to be heard again when the hearing officer submits a report and proposed decision to the Commission, but we disagree. We have previously held that where "[a]ll evidence bearing on the Commission's ultimate decision was presented at the hearing, and the parties had an opportunity to rebut it . . . it cannot be said that the hearing violated due process."[37] In several other contexts, we have found no issue with a commission's adoption of a proposed order from a hearing officer.[38] There is no reason Patrick should have an additional opportunity to reargue the evidence presented at the administrative hearing in front of the Commission or the designated member of the Commission.

However, we note that the ordinance does not require that the proposed decision be served on the parties.[39] In *Alaska Transportation Commission v. Gandia*, we

---

[37] *Alaska Transp. Comm'n v. Gandia*, 602 P.2d 402, 406 (Alaska 1979).

[38] *Kimble v. State, Dep't of Commerce & Econ. Dev., Bd. of Nursing*, 928 P.2d 1201 (Alaska 1996) (Board of Nursing adopted proposed decision of hearing officer); *Grunert v. State, Commercial Fisheries Entry Comm'n*, 735 P.2d 118 (Alaska 1987) (Commercial Fisheries Entry Commission affirmed decision of hearing officer); *Storrs v. State Med. Bd.*, 664 P.2d 547 (Alaska 1983) (Board of Nursing adopted proposed findings).

[39] *See* AMC 11.10.030(D).

left open the question of whether due process required notice of the proposed decision.[40] While in other circumstances this lack of service might be problematic, we again decline to answer this question because Patrick fails to show how the process prejudiced her. Due process requires that there be some actual prejudice,[41] not merely the "theoretical possibility of prejudice."[42] Patrick's arguments are theoretical. She shows no factual error in the hearing officer's proposed decision that would render any decision by the commissioner erroneous, nor does she suggest that she would have done anything other than restate her arguments presented in the hearing. Further, Patrick was not without recourse to attack the ultimate decision. She can — as she did — appeal it. Because Patrick failed to show actual prejudice, we decline to consider this issue further.[43]

C.     **The Superior Court Did Not Err In Affirming The Commission Where Both Entities Failed To Consider That Patrick Had Appealed The Tickets Upon Which The Revocation Was Based.**

Finally, Patrick argues that her license should not have been revoked because she was appealing the prior citations. She claims that there was no method for her to request a stay of the revocation in the administrative proceedings and that the

---

[40]     *Gandia*, 602 P.2d at 406 n.5 (declining to consider whether notice of the proposed decision is required by procedural due process).

[41]     *See Paula E. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 276 P.3d 422, 433 (Alaska 2012) ("Although the due process analysis is a flexible and contextual one focusing on the interest and not the outcome, there must be some actual prejudice under the second prong and not merely the 'theoretical possibility of prejudice.' ").

[42]     *D.M. v. State, Div. of Family & Youth Servs.*, 995 P.2d 205, 212 (Alaska 2000).

[43]     It may be a better practice to provide parties a copy of the proposed decision and allow for reconsideration based on factual or legal errors, but in this case, the failure to do so is not a violation of due process.

hearing officer's, Commission's, and superior court's failure to consider the impact of the prior tickets on her revocation hearing was a violation of due process.

If Patrick's earlier citations are dismissed, then a prerequisite to her license revocation no longer exists. The Anchorage Municipal Code provides that tickets that are dismissed upon appeal do not count towards the chronic violator determination.[44] It does not address tickets that are pending appeal. The Municipality argues that this omission means that all other citations, including those pending appeal, count towards the chronic violator designation.

We conclude that the Municipality is correct. Citations pending appeal are effective for the purposes of chronic violator designation, and thus they were properly considered by the Commission and the superior court in affirming the revocation. We are convinced that policy considerations cited by the superior court support this conclusion: "if the mere possibility that an offender might someday overturn a prior conviction operated to bar reliance upon it, then all of the many such statutory schemes now in place would be of no effect."[45] The possibility of appeal rendering the citation ineffective would all but obliterate the chronic violator designation. This is especially true in this case, where the citations were issued and the time for appeal had passed.[46] Accordingly, the late-filed appeal of the citations does not render the prior citations ineffective.

---

[44]     AMC 11.10.110(A)(4).

[45]     For example, AS 28.15.181 lists several criminal convictions that are grounds for "immediate revocation of a drivers license."

[46]     Patrick filed an untimely appeal on her other citations and the superior court found only that there must be some procedure through which she could argue that there was good cause for delay.

However, this is not to say Patrick had to stand idly by while she appealed her other tickets. She could have sought a stay in the appeal of those tickets under Alaska Appellate Rules 603(a) and 205. These rules provide the appropriate method to ensure that citations that are appealed, but not yet decided, do not count towards the chronic violator designation. She does not dispute that she never requested a stay of the citations in her appeal of those citations. Accordingly, we conclude that the prior citations were properly considered.

## V. CONCLUSION

Because there is substantial evidence supporting the finding that Patrick was driving the taxi on the night in question, because the process for appeal of a license revocation did not violate her right to due process, and because Patrick's due process rights were not otherwise violated, we AFFIRM the decision of the superior court affirming the Commission's decision in all respects.