*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| In the Matter of the Necessity for the Hospitalization of | ) ) ) | Supreme Court No. S-15100 |
| DANIEL G. | ) ) | Superior Court No. 3AN-13-00454 PR |
| | ) ) | O P I N I O N |
| | ) ) | No. 6862 – February 7, 2014 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Frank A. Pfiffner, Judge.

Appearances: James B. Gottstein, Law Project for Psychiatric Rights, Inc., Anchorage, for Appellant Daniel G. Laura Fox, Assistant Attorney General, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for Appellee State of Alaska.

Before: Fabe, Chief Justice, Winfree, Stowers, and Bolger, Justices. [Maassen, Justice, not participating.]

FABE, Chief Justice.

I. INTRODUCTION

Daniel G. appeals an ex parte order authorizing a 72-hour psychiatric evaluation issued after his emergency detention.[1] The evaluation personnel determined

---

[1] We use a pseudonym to protect Daniel's privacy.

that Daniel did not meet the statutory criteria for involuntary commitment, and he was released before the expiration of the 72-hour evaluation period. He argues that the evaluation order violated his constitutional right to due process because it was issued on an ex parte basis, without notice and a hearing, while he was safely in protective custody. The superior court denied Daniel's motion to vacate the evaluation order as moot in light of Daniel's release. We conclude that although Daniel's appeal is technically moot, the public interest exception to the mootness doctrine applies, and we reach the merits of his due process claim. We further conclude that the 72-hour evaluation order and the statutory evaluation procedures do not violate due process, and we affirm the evaluation order. But we remand this case to the superior court for correction of the title of the superior court's order authorizing Daniel's hospitalization for evaluation.

## II. FACTS AND PROCEEDINGS

On the morning of February 26, 2013, a police officer took emergency custody of Daniel after Daniel's father reported that Daniel was threatening suicide. At 8:50 a.m. the police officer transported Daniel to the Providence Alaska Medical Center Psychiatric Emergency Room under AS 47.30.705 and gave the Providence staff a "Notice of Emergency Detention and Application for Evaluation."[2]

At approximately 3:10 p.m., Providence staff filed a "Petition for Involuntary Commitment for Evaluation" under AS 47.30.700 and AS 47.30.710, asking the superior court to authorize detention of Daniel at the Alaska Psychiatric Institute

---

[2]   AS 47.30.705(a) provides that "[a] peace officer . . . who has probable cause to believe that a person is gravely disabled or is suffering from mental illness and is likely to cause serious harm to self or others of such immediate nature that considerations of safety do not allow initiation of involuntary commitment procedures set out in AS 47.30.700, may cause the person to be taken into custody and delivered to the nearest evaluation facility."

(API) for 72 hours for psychiatric evaluation.[3] The petition stated that Daniel had a history of mental illness with multiple hospitalizations and diagnoses. It proceeded to detail Daniel's suicide threats as well as his violent threats against his father. The petition concluded that Daniel "refuses mental health intervention, has no insight into his mood problem and requires involuntary hospitalization for his safety."

Magistrate Judge Jonathon H. Lack signed the "Order on Petition for Involuntary Commitment for Evaluation" at 3:45 p.m., which authorized transfer of Daniel to API for an evaluation period not to exceed 72 hours.[4] The order stated that the trial court had considered the sworn allegations in the petition and found that the respondent was likely to cause serious harm to himself because the petition alleged that he was "actively suicidal."

The evaluation order required API to have Daniel evaluated by a mental health professional and a physician within 24 hours of his arrival. Daniel was admitted to API later that day at 7:29 p.m.

The next day, on February 27 at 3:03 p.m., Superior Court Judge Frank A. Pfiffner approved and signed the magistrate judge's recommended order. The superior

---

[3]     *See* AS 47.30.710(b) (authorizing hospitalization if mental health professional "has reason to believe that the respondent is (1) mentally ill and that condition causes the respondent to be gravely disabled or to present a likelihood of serious harm to self or others, and (2) is in need of care or treatment," and requiring application for "an ex parte order authorizing hospitalization for evaluation" if no judicial order has been obtained under AS 47.30.700).

[4]     Because hospitalization for evaluation does not constitute an "involuntary commitment," the titles of the court system's MC-100 and MC-305 forms have been changed during the pendency of this appeal to accurately reflect the statutory language of AS 47.30.710. Form MC-100 is now titled "Petition for Hospitalization for Evaluation." Form MC-305 is now titled "Order Authorizing Hospitalization for Evaluation."

court scheduled a 30-day commitment hearing for February 28 at 1:30 p.m. to be held if a commitment petition was filed during Daniel's detention. The superior court gave Daniel and the Public Defender Agency notice of the scheduled hearing.

On the morning of February 28, Daniel filed a motion to vacate the order. Daniel argued before the superior court that (1) the order violated due process because it was issued ex parte without an emergency justification; (2) the order should not have been implemented before it was signed by the superior court judge; (3) the order was issued without a sufficiently searching inquiry; (4) the findings were insufficient to support the order; (5) the order impermissibly relied on hearsay; and (6) the petition filed by Providence staff was defective.

Later the same morning of February 28, at 11:25 a.m., API evaluation personnel discharged Daniel because they "did not find that [he] met the standards for commitment specified in AS 47.30.700."

A compliance hearing was held that afternoon. The State's representative informed the magistrate judge that Daniel had already been discharged. Daniel reminded the court that he had filed a motion to vacate the order that morning and advised the court that he did not consider the motion to be moot.

On March 6 the superior court denied Daniel's motion to vacate the order, reasoning that the motion was moot in light of Daniel's release. Daniel appeals his due process claim and the denial of his motion to vacate.

## III.    STANDARD OF REVIEW

We consider whether an order of the superior court is appealable de novo.[5] "Mootness is a matter of judicial policy and its application is a question of law" that we

---

[5]     *Husseini v. Husseini*, 230 P.3d 682, 685 (Alaska 2010).

also review de novo.[6] Under de novo review, we apply our "independent judgment to the interpretation of the Alaska Constitution and statutes."[7] When reviewing a question de novo, our duty is to adopt "the rule of law that is most persuasive in light of precedent, reason, and policy."[8]

## IV. DISCUSSION

### A. The Denial Of Daniel's Motion To Vacate The Evaluation Order Was Appealable.

The State argues that Daniel cannot bring this appeal because the evaluation order is not a final appealable judgment under Appellate Rule 202(a)[9] and because Daniel prevailed below. The State contends that the evaluation order did not resolve a civil commitment proceeding but specifically contemplated further proceedings in which the respondent's mental health status and the necessity of commitment would be litigated if necessary.[10] The language of the order states that "examination and evaluation shall be completed within 72 hours" and a "petition for a 30-day commitment shall be filed

---

**6** *In re Joan K.*, 273 P.3d 594, 595-96 (Alaska 2012) (citing *In re Tracy C.*, 249 P.3d 1085, 1089 (Alaska 2011)).

**7** *Wetherhorn v. Alaska Psychiatric Inst.*, 156 P.3d 371, 375 (Alaska 2007) (footnotes omitted) (quoting *Guin v. Ha*, 591 P.2d 1281, 1284 n.6 (Alaska 1979)).

**8** *Id.*

**9** "[A]n order must constitute a final judgment, such that it 'disposes of the entire case and ends the litigation on its merits,' for this court to review it on appeal." *Husseini*, 230 P.3d at 687 (quoting *Richard v. Boggs*, 162 P.3d 629, 633 (Alaska 2007)).

**10** "The basic thrust of the finality requirement is that the judgment must be one which disposes of the entire case, '. . . one which ends litigation on the merits and leaves nothing for the court to do but execute the judgment.' " *Martech Constr. Co. v. Ogden Envtl. Servs., Inc.*, 852 P.2d 1146, 1153 (Alaska 1993) (omission in original) (quoting *Greater Anchorage Area Borough v. City of Anchorage*, 504 P.2d 1027, 1030 (Alaska 1972)).

or the respondent shall be released . . . before the end of the 72-hour evaluation period" in compliance with AS 47.30.715.[11] The State argues that no final appealable judgment exists unless and until an evaluation order is followed by a commitment hearing and a 30-day commitment order.

In its argument, the State does not address the superior court's denial of Daniel's motion to vacate the evaluation order as a possible basis for appeal, focusing only on the evaluation order. By contrast, Daniel asserts that the denial of his motion to vacate ended the litigation and that under this court's precedent "[a] final, appealable 'judgment' is one that, however denominated, 'disposes of the entire case and ends the litigation on the merits.' "[12] Daniel argues that for the purposes of determining finality, we have emphasized that "the reviewing court should look to the substance and effect, rather than form, of the rendering court's judgment."[13] *Martech Construction Co. v. Ogden Environmental Services, Inc.*, the case relied on by the State, also emphasizes that "[t]his court should look to the effect of the judgment, rather than the form."[14] Daniel reasons that after the superior court decided that the motion to vacate was moot, there was nothing further he could do; therefore, the case is appealable. Daniel took care at the compliance hearing to state on the record that he did not consider his motion to vacate to be moot.

---

[11]     AS 47.30.715 provides that "[w]hen a facility receives a proper order for evaluation, . . . [t]he facility shall promptly notify the court of the date and time of the respondent's arrival. The court shall set a date, time, and place for a 30-day commitment hearing, to be held if needed within 72 hours after the respondent's arrival . . . ."

[12]     *Denali Fed. Credit Union v. Lange*, 924 P.2d 429, 431 (Alaska 1996) (quoting *Borg-Warner Corp. v. Avco Corp.*, 850 P.2d 628, 634 (Alaska 1993)).

[13]     *Id.* (internal quotation marks omitted).

[14]     852 P.2d at 1153.

The State's second argument is that Daniel is not entitled to appeal because the superior court proceedings resolved in his favor when he was released without being committed. The State characterizes the evaluation order as an interlocutory order[15] and analogizes the situation to both criminal defendants who are arrested on probable cause but released without conviction and civil litigants who are denied summary judgment but win at trial. The State again does not address the denial of Daniel's motion to vacate the order.

Daniel disputes the State's assertion that he prevailed completely in the end and the relevance of the State's analogies. He points out that he was released based on API's determination that he did not meet commitment criteria. He argues that the court never ruled in his favor: the only trial court rulings — the ex parte evaluation order and the denial of his motion to vacate — were resolved against him.

We agree with Daniel that the denial of his motion to vacate ended the litigation below. We also agree with Daniel that because his motion was denied, he did not prevail completely below. We "look to the effect of the judgment, rather than the form,"[16] and the effect of the denial of Daniel's motion to vacate was to end litigation in the trial court and to leave Daniel with no recourse other than appeal to this court. We therefore conclude that the denial of Daniel's motion to vacate the evaluation order was appealable.[17]

---

[15]    "A party generally may not appeal a judgment in its favor in order to challenge an interlocutory order." *Peter A. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 146 P.3d 991, 994 (Alaska 2006) (citing *Fairbanks Fire Fighters Ass'n, Local 1324 v. City of Fairbanks*, 48 P.3d 1165, 1168 (Alaska 2002)).

[16]    *Martech*, 852 P.2d at 1153.

[17]    The State also argues that AS 47.30.765, which provides "[t]he respondent

(continued...)

**B. Although This Case Is Now Moot, We Apply The Public Interest Exception To Mootness In Order To Reach The Merits Of Daniel's Due Process Claims.**

"A claim is moot if it is no longer a present, live controversy, and the party bringing the action would not be entitled to relief, even if it prevails."[18] This court has deemed appeals related to commitment orders to be moot when the commitment period has passed.[19] But this rule is subject to at least two exceptions: the public interest exception[20] and the collateral consequences exception.[21]

---

[17](...continued)
has the right to an appeal from an order of involuntary commitment," does not give Daniel a right to appeal because the evaluation order was not "an order of involuntary commitment." But Daniel does not base his right to appeal on this statutory provision and does not address AS 47.30.765 in his briefing.

[18] *Wetherhorn v. Alaska Psychiatric Inst.*, 156 P.3d 371, 380 (Alaska 2007) (quoting *Fairbanks Fire Fighters*, 48 P.3d at 1167).

[19] *Id.* at 380. Daniel asks this court to reconsider the mootness holding of *Wetherhorn* and argues that "people subjected to involuntary commitment orders have the right to have their appeals heard on the merits, regardless of whether they have demonstrated collateral consequences or the public interest exception to the mootness doctrine applies." Because we apply the public interest exception to reach the merits of Daniel's due process claims, we decline to consider overruling *Wetherhorn*'s general mootness holding.

[20] *Id.* at 380-81; *E.P. v. Alaska Psychiatric Inst.*, 205 P.3d 1101, 1106-07 (Alaska 2009); *see also In re Joan K.*, 273 P.3d 594, 596 (Alaska 2012).

[21] *In re Joan K.*, 273 P.3d at 597-98.

## 1.  Daniel's appeal satisfies the public interest exception.

We "will . . . consider a question otherwise moot if it falls within the public interest exception to the mootness doctrine."[22] In determining whether the public interest exception applies, we look to these factors: "(1) whether the disputed issues are capable of repetition, (2) whether the mootness doctrine, if applied, may cause review of the issues to be repeatedly circumvented, and (3) whether the issues presented are so important to the public interest as to justify overriding the mootness doctrine."[23] "None of the individual factors is dispositive; rather, we use our discretion to determine whether the public interest dictates that immediate review of a moot issue is appropriate."[24]

In *E.P. v. Alaska Psychiatric Institute*, we applied the public interest exception when we determined that (1) the questions of statutory interpretation and procedure did not depend on the appellant's unique facts and were capable of repetition; (2) the questions would circumvent review because of the involuntary commitment time frame; and (3) the questions raised were "important to the public interest" because involuntary commitment entails a " 'massive curtailment of liberty,' " and "[t]he interpretation and scope of involuntary commitment statutes affect the power of the state to curtail the liberty of any member of the public."[25] All three factors weigh in favor of review in this case.

---

[22]    *Wetherhorn*, 156 P.3d at 380.

[23]    *Id.* at 380-81 (quoting *Akpik v. State, Office of Mgmt. & Budget*, 115 P.3d 532, 536 (Alaska 2005)).

[24]    *Fairbanks Fire Fighters Ass'n, Local 1324 v. City of Fairbanks*, 48 P.3d 1165, 1168 (Alaska 2002).

[25]    205 P.3d at 1106-08 (quoting *Wetherhorn*, 156 P.3d at 375).

First, as in *E.P.*,[26] the disputed issues in this case do not depend heavily on Daniel's unique facts and therefore are capable of repetition. "When disputed issues turn on unique facts unlikely to be repeated, we have refused to find an exception to mootness."[27] But Daniel is not challenging his initial detention, which might entail case-specific factual analysis, but rather the fact that he was subject to an ex parte evaluation order. The question of the constitutionality of subjecting someone in custody under AS 47.30.705 to an ex parte proceeding arises every time that an evaluation petition is filed under AS 47.30.710(b).

Second, due process challenges to evaluation orders under AS 47.30.710(b) will repeatedly circumvent review because the authorized 72-hour confinement period will have long since expired before an appeal can be heard.[28]

Third, Daniel argues that the question whether people are regularly subjected to unconstitutional ex parte proceedings in the superior court presents an issue of sufficient importance to the public interest as to justify overriding the mootness doctrine. Daniel also notes the importance of providing guidance to courts as to when such ex parte orders are permissible. The State argues that this case does not warrant discretionary review. But Daniel's due process claims do implicate the scope and

---

[26] *Id.* at 1107.

[27] *Id.* (citing *Wetherhorn*, 156 P.3d at 381, where we found the public interest exception inapplicable under the first prong because the facts were specific to Wetherhorn and therefore the issue was not capable of repetition).

[28] *See id.* (stating that "[i]t is quite unlikely that an appeal from a 30-day or 90-day commitment, or even a 180-day commitment, could be completed before the commitment has expired").

interpretation of the statutory provisions that allow the State to curtail the liberty of members of the public.[29] We thus conclude that Daniel's claims satisfy the third factor.

Because all three factors of the public interest exception to the mootness doctrine are satisfied, we conclude that we will review Daniel's due process claims.[30]

### 2. Daniel's evaluation order form, based on a court system form, contained inaccurate language which we have corrected.

Daniel argues that the collateral consequences exception to the mootness doctrine should be extended to the appeal of orders authorizing hospitalization for evaluation.[31] He points to the former title of form order MC-305, "Order on Petition for

---

[29]     *See id.*

[30]     Daniel argued in the alternative that if this court holds his appeal moot and declines review, this court should order a vacatur of the order. Because we reach the merits of Daniel's claim, we do not decide whether vacatur of the superior court's order would have been appropriate if we had dismissed his claim as moot. We do note the availability of a potential alternative remedy under AS 47.30.850, which provides:

> Following the discharge of a respondent from a treatment facility or the issuance of a court order denying a petition for commitment, the respondent may at any time move to have all court records pertaining to the proceedings expunged on condition that the respondent file a full release of all claims of whatever nature arising out of the proceedings and the statements and actions of persons and facilities in connection with the proceedings. Upon the filing of the motion and full release, the court shall order the court records either expunged or sealed, whichever the court considers appropriate under the circumstances.

[31]     "[T]he collateral consequences doctrine 'allows courts to decide otherwise-moot cases when a judgment may carry indirect consequences in addition to its direct force, either as a matter of legal rules or as a matter of practical effect.' " *In re Joan K.*, 273 P.3d 594, 597-98 (Alaska 2012) (quoting *Peter A. v. State, Dep't of Health & Soc.*
(continued...)

Involuntary Commitment for Evaluation," to argue that an order authorizing a 72-hour hospitalization for evaluation under AS 47.30.710(b) could entail collateral consequences similar to those of an involuntary commitment order.

We acknowledge that the former title of the form order incorrectly referred to involuntary commitment instead of using the statutory language, "ex parte order authorizing hospitalization for evaluation," found in AS 47.30.710(b). And we understand Daniel's concerns about the possibility of collateral consequences stemming from the use of the term "involuntary commitment" to refer to a 72-hour hospitalization for evaluation under AS 47.30.710(b). As noted above, we have taken administrative action during the pendency of this appeal to correct the title of forms MC-100 and MC-305. Form MC-100 is now titled "Petition for Hospitalization for Evaluation." Form MC-305 is now titled "Order Authorizing Hospitalization for Evaluation." Because we reach the merits of Daniel's due process claims under the public interest exception to the mootness doctrine, we do not further address the applicability of the collateral consequences exception in the context of a 72-hour evaluation order.

C.     **The Evaluation Order Issued Ex Parte Did Not Violate Daniel's Constitutional Right to Due Process.**

Daniel claims that his procedural due process rights were violated because he was not given notice and a hearing prior to the issuance of the order that he be hospitalized for a 72-hour evaluation. He argues that because he was already in protective custody, there was no emergency that would justify the lack of notice and a hearing before the issuance of the 72-hour evaluation order.

---

[31](...continued)
*Servs., Office of Children's Servs.*, 146 P.3d 991, 994-95 (Alaska 2006)).

### 1. An evaluation order issued in compliance with AS 47.30.710 satisfies *Wetherhorn*'s requirement of an "expedited process."

Daniel relies on *Wetherhorn v. Alaska Psychiatric Institute*, in which we held that "[i]nvoluntary commitment implicates Alaska's constitutional guarantees of individual liberty and privacy and therefore entitles the respondent to due process protections."[32] Although Daniel was not subjected to an involuntary commitment proceeding, he is correct to assert that his emergency detention and subsequent hospitalization for evaluation also implicate due process protections. In *Wetherhorn*, we emphasized that the process following initial confinement under an ex parte order under AS 47.30.705 must be "expedited," stating: "The expedited process required for involuntary commitment proceedings is aimed at mitigating the infringement of the respondent's liberty rights that begins the moment the respondent is detained involuntarily."[33]

Alaska Statutes Title 47 details a mandatory timeline for emergency psychiatric detention and evaluation which reflects the legislative concern for the liberty interests at stake. Alaska Statute 47.30.710(a) requires that a person who is detained for a psychiatric emergency be examined and evaluated by a mental health professional and a physician within 24 hours of arrival at an evaluation facility. If, after the initial emergency examination, the mental health professional has reason to believe the person is "(1) mentally ill and that condition causes the respondent to be gravely disabled or to present a likelihood of serious harm to self or others, and (2) is in need of care or

---

[32] 156 P.3d 371, 379 (Alaska 2007) (citations omitted); *see also Addington v. Texas*, 441 U.S. 418, 425 (1979) ("[C]ivil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection.").

[33] *Wetherhorn*, 156 P.3d at 381.

treatment,"[34] then AS 47.30.710(b) permits the mental health professional to arrange for the hospitalization of the person for evaluation on "an emergency basis."

In response to Daniel's argument that there was no on-going psychiatric emergency, we note that he does not challenge his initial emergency detention by the police officer. Less than seven hours passed between the initial detention and the issuance of the evaluation order. Daniel was transported to API and admitted within four hours of the issuance of the order. The psychiatric personnel who filed the petition for evaluation stated under oath that Daniel continued to present a threat of harm. Other than the fact of being in custody, there is nothing in the record to indicate that the initial emergency had abated before the issuance of the evaluation order. Based on AS 47.30.710(b)'s provision for hospitalization for a 72-hour evaluation on "an emergency basis," the legislature clearly envisioned that a psychiatric emergency could continue past the initial emergency detention. Daniel's evaluation order was appropriately issued on an emergency basis under AS 47.30.710(b).

The 72-hour hospitalization for evaluation on an emergency basis must be approved by a judicial officer via an "ex parte order authorizing hospitalization for evaluation."[35] After receiving a proper order, the evaluation facility "shall accept the order and the respondent for an evaluation period not to exceed 72 hours."[36] The evaluation facility must "promptly notify the court of the date and time" of the person's arrival in order to ensure that a full 30-day commitment hearing is held, if needed,

---

[34]     AS 47.30.710(b). In *Wetherhorn*, we concluded that the state's involuntary commitment statutes satisfy due process if they are construed to require a showing that a respondent is both (1) mentally ill and (2) in danger of harming himself or others or unable to live safely outside a controlled environment. *Wetherhorn*, 156 P.3d at 384.

[35]     AS 47.30.710(b).

[36]     AS 47.30.715.

"within 72 hours" of the person's arrival.[37] "If at any time in the course of the 72-hour period the mental health professionals conducting the evaluation determine that the respondent does not meet the standards for commitment . . . , the respondent shall be discharged from the facility . . . ."[38]

The result of this statutory framework is that a person in Daniel's position is given an initial evaluation within 24 hours. If the mental health professional determines that further evaluation is necessary, the statutory structure then ensures that a judicial officer will review the probable cause justifying the initial emergency detention as well as the justification for additional emergency hospitalization and evaluation.[39] This second evaluation must be completed within 72 hours and followed by the release of the respondent or a 30-day commitment hearing with extensive procedural protections.[40] We conclude that the emergency psychiatric detention and evaluation statutes applied in Daniel's case satisfy *Wetherhorn*'s requirements because they provide for an expedited process that is appropriately protective of the respondent's liberty interests and that avoids unnecessarily prolonging the respondent's emergency detention.

---

[37] *Id.*

[38] AS 47.30.720.

[39] *See* AS 47.30.705 (allowing for emergency psychiatric detention and evaluation of a person when a peace officer, a psychiatrist or physician, or a clinical psychologist "has probable cause to believe that [the] person is gravely disabled or is suffering from mental illness and is likely to cause serious harm to self or others of such immediate nature that considerations of safety do not allow initiation of involuntary commitment procedures set out in AS 47.30.700").

[40] *See* AS 47.30.735 (establishing the procedures and standards for 30-day commitments).

**2.      The *Mathews v. Eldridge* test applies to Daniel's due process claim regardless of the existence of an emergency situation.**

In analyzing Daniel's due process claim, we apply the foundational test from *Mathews v. Eldridge*.[41] Daniel disputes the applicability of the *Mathews v. Eldridge* test.  He argues that we should not reach the *Mathews v. Eldridge* analysis in this case because due process mandates a per se rule of notice and a hearing before deprivation absent an emergency situation, and that in this case there was no emergency to justify the lack of prior notice and a hearing.  We disagree that the application of the *Mathews v. Eldridge* analysis depends on the existence of an emergency.

Daniel cites to the recent decision of this court in *Patrick v. Municipality of Anchorage, Anchorage Transportation Commission* for the proposition that a party is automatically "entitled to some form of hearing appropriate to the circumstances *before* revocation, absent an emergency situation or a public safety concern requiring summary action."[42]  Even though there was no emergency situation in *Patrick*, we still applied the *Mathews v. Eldridge* balancing test:

---

[41]      424 U.S. 319, 334-35 (1976) (announcing the test for due process deprivations under the federal constitution).  We described the *Mathews* test as "instructive" when interpreting the requirements of due process under the Alaska Constitution in *City of Homer v. State, Department of Natural Resources*, 566 P.2d 1314, 1319 (Alaska 1977), and we recently stated in *Patrick v. Municipality of Anchorage, Anchorage Transportation Commission*, 305 P.3d 292, 299 (Alaska 2013), that "[w]e look to the [*Mathews* test] to determine the requirements of due process."

[42]      305 P.3d at 299 (emphasis in original) (footnote omitted).

> Due process does not require any specific type of hearing. The necessary opportunity to be heard depends on the nature of the case; it is "not fixed in form." We look to the test set forth by the United States Supreme Court in *Mathews v. Eldridge* to determine the requirements of due process.[43]

Daniel also cites to *Zinermon v. Burch* where the U.S. Supreme Court similarly stated that "[d]ue process . . . is a flexible concept that varies with the particular situation" and applied the *Mathews v. Eldridge* test in a civil commitment case.[44]

Whether or not there was an emergency situation at the time of the evaluation order, our precedent dictates that the *Mathews v. Eldridge* test applies in the due process analysis.

### 3. The *Mathews v. Eldridge* factors weigh against Daniel's due process claim.

In order to determine if Daniel's hospitalization for evaluation complied with due process, we apply the *Mathews v. Eldridge* due process balancing test:

> [The] identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function

---

[43]   *Id.* (footnotes omitted).

[44]   494 U.S. 113, 127 (1990).

involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.[45]

In applying this test, we conclude that Daniel's procedural due process rights were not violated, that the State's emergency detention and evaluation procedures worked efficiently and effectively, and that the additional protections that Daniel advocates would likely *lengthen* unnecessary confinement.

In characterizing the "private interest" affected pursuant to the first *Mathews v. Eldridge* factor, the State distinguishes between the purpose and meaning of a 72-hour evaluation order and a 30-day involuntary commitment order. The State notes that a 30-day commitment order indicates that a court has found by clear and convincing evidence that the respondent is mentally ill and a danger to himself or others, or is gravely disabled.[46] The State argues that the purpose of a 72-hour evaluation order, on the other hand, is to obtain a professional medical opinion on whether commitment is necessary and does not mean that a court has definitely ruled on a respondent's condition. The State asserts that the private interest at stake in this case is not freedom from confinement since Daniel does not challenge his initial emergency detention, but rather Daniel's interest in not being subjected to further emergency psychiatric evaluation under a 72-hour evaluation order.

---

[45]    *Mathews*, 424 U.S. at 334-35.

[46]    *See In re Joan K.*, 273 P.3d 594, 598 (Alaska 2012) ("To involuntarily commit someone to a treatment facility for up to 30 days, a court must first find, by clear and convincing evidence, that the person 'is mentally ill and as a result is likely to cause harm to [self] or others or is gravely disabled.' " (alteration in original) (quoting AS 47.30.735(c))).

In *Wetherhorn*, we recognized that the "infringement of the respondent's liberty rights . . . begins the moment the respondent is detained involuntarily."[47] We decline to parse the magnitude of the liberty interest at stake in a 72-hour evaluation that followed from an uncontested emergency detention. But we recognize that Daniel himself has an interest in an accurate and expedited emergency evaluation and prompt judicial review of his emergency detention and evaluation.

The reasoning of the Washington Supreme Court in *In re Harris*[48] is helpful in considering the private interest at stake in a psychiatric emergency as well as the practical effects of Daniel's due process argument in emergency situations. The court addressed the constitutionality of the involuntary detention provisions contained in a Washington statute that permitted the 72-hour detention of a person who presented a "likelihood of serious harm to others or himself."[49] The Washington court addressed the statutory requirement of " 'imminent danger' for temporary emergency detentions."[50] The court recognized that "the potential deprivation of liberty is great."[51] But the court also noted "the practical effect of being placed in the hospital will usually eliminate the 'imminence' of one's dangerousness."[52] It concluded: "If we were to require 'imminent danger' as a requirement of continued commitment, we would be creating a standard that

---

[47] *Wetherhorn v. Alaska Psychiatric Inst.*, 156 P.3d 371, 381 (Alaska 2007).

[48] 654 P.2d 109 (Wash. 1982).

[49] *Id.* at 110 (quoting a Washington statute that has since been revised).

[50] *Id.* at 113 (same).

[51] *Id.*

[52] *Id.*

(in many cases) would invalidate commitment as soon as it occurs."[53]  Similarly, if this court found that the emergency that justified Daniel's initial detention was abated simply by the fact of custody, then emergency detention would often be invalidated as soon as it occurred without a full psychiatric evaluation of the respondent's condition, need for treatment, and "likelihood of serious harm to self or others."[54]

In applying the second *Mathews v. Eldridge* factor, we conclude that the risk of an erroneous deprivation through the procedures used is relatively low.  The evaluation petition was filed by disinterested medical staff after determining that Daniel was in need of a full psychiatric evaluation.  A neutral magistrate judge promptly reviewed the petition and determined that it stated adequate cause to support an evaluation.[55]  We recognize that preliminary determinations may be incorrect and result

---

[53]     *Id.*

[54]     AS 47.30.710(b).

[55]     Although neither party briefs the applicability of the Fourth Amendment protection against unreasonable seizures in the context of emergency psychiatric detention and evaluation, we note that federal precedent exists applying the Fourth Amendment to involuntary hospitalization of persons for psychiatric reasons. *See Ahern v. O'Donnell*, 109 F.3d 809, 815-16 (1st Cir. 1997) (concluding that seizing an individual for involuntary hospitalization pursuant to state statute required probable cause); *Villanova v. Abrams*, 972 F.2d 792, 795 (7th Cir. 1992) ("A civil commitment is a seizure, and may be made only upon probable cause . . . ."); *United States v. Shields*, 522 F. Supp. 2d 317, 332 (D. Mass. 2007) ("It is well-settled that the Fourth Amendment protection against unreasonable seizures applies to the involuntary hospitalization of persons for psychiatric reasons."). The United States Supreme Court has determined that "[w]hen the stakes are . . . high, the detached judgment of a neutral magistrate is essential if the Fourth Amendment is to furnish meaningful protection from unfounded interference with liberty." *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975) ("[T]he Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest.").  Absent emergency or extraordinary

(continued...)

in unnecessary 72-hour evaluations. But the evaluation period may also not last a full 72 hours, and the result of the evaluation may be immediate freedom. This is in fact what happened to Daniel.

The record shows that the State complied with the statutory requirements for emergency detention and evaluation[56] and that Daniel would have received a post-deprivation hearing with extensive procedural protections[57] within the time required by statute had a commitment petition been filed.[58] We agree with the State's position that a prompt evaluation under an expeditiously issued ex parte order is more likely to result in the prompt release of a respondent who does not meet the standards for commitment than a procedure under which a full psychiatric evaluation does not occur until after a contested hearing with counsel.[59] As a practical matter, a pre-evaluation hearing could not occur as quickly as an ex parte order and would likely *lengthen* a respondent's

---

[55](...continued) circumstances, the probable cause determination should occur within 48 hours of detention. *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 56-57 (1991).

[56]     AS 47.30.715 provides:

> When a facility receives a proper order for evaluation, it shall accept the order and the respondent for an evaluation period not to exceed 72 hours. . . . The court shall set a date, time, and place for a 30-day commitment hearing, to be held if needed within 72 hours after the respondent's arrival . . . .

[57]     *See* AS 47.30.730-.735.

[58]     The superior court scheduled a 30-day commitment hearing to be held two days after Daniel's initial detention, but Daniel was released prior to the scheduled time.

[59]     Because Daniel did not brief the *Mathews v. Eldridge* test, the court was not presented with proposed alternative procedures to an ex parte evaluation order. At oral argument, however, Daniel argued that due process at the very least required a hearing with appointed counsel prior to the issuance of a 72-hour evaluation order.

unnecessary confinement beyond 72 hours. We conclude that this would defeat the legislative scheme and could result in a greater deprivation of an individual's liberty than the expedited emergency evaluation and judicial review process now in place.

In applying the third *Mathews v. Eldridge* factor, which looks to the government's interest and the burdens of an alternative procedure, we agree with the State that it has a strong interest in obtaining a prompt psychiatric evaluation of a respondent who has been detained on an emergency basis to determine if civil commitment is warranted.[60] We recognize the practical importance of evaluation orders for the functioning of the civil commitment system and the necessity of providing the court in a subsequent 30-day commitment hearing with the opinion of an informed health professional.

We conclude that a pre-evaluation hearing with appointed counsel would provide little additional benefit to the respondent. Sufficient due process is provided by the statutory requirements for a speedy evaluation and either release or subsequent court hearing.[61] We therefore conclude that Daniel's right to due process was not violated.

## V. CONCLUSION

We AFFIRM the superior court's evaluation order and REMAND for correction of the title of the order in accordance with this opinion.

---

[60] In accordance with the applicable Alaska Statutes, Daniel's emergency detention was reviewed by a detached and neutral magistrate less than eight hours after his initial detention. As a practical matter, requiring an adversarial hearing prior to judicial review of an emergency psychiatric detention would likely entail that a person in Daniel's position would be detained longer than 48 hours before a judicial determination of probable cause could be made. This would adversely affect the State's interest in promptly ensuring that persons in Daniel's position are not detained without probable cause.

[61] *See* AS 47.30.700-.735.