*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| In the Matter of the Necessity for the Hospitalization of | ) ) ) | Supreme Court No. S-15793 |
| HEATHER R. | ) ) | Superior Court No. 3AN-14-02936 PR |
| | ) ) | O P I N I O N |
| | ) ) | No. 7078 – January 29, 2016 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Paul E. Olson, Judge.

Appearances: James B. Gottstein, Law Project for Psychiatric Rights, Inc., Anchorage, for Appellant. Robert H. Schmidt, Law Offices of Robert Schmidt, PC, Anchorage, for Appellee. Laura Fox, Assistant Attorney General, Anchorage, and Craig W. Richards, Attorney General, Juneau, for Amicus Curiae State of Alaska.

Before: Stowers, Chief Justice, Fabe, Maassen, and Bolger, Justices. [Winfree, Justice, not participating.]

BOLGER, Justice.

## I.    INTRODUCTION

Several members of a condominium homeowners association petitioned the superior court to order a woman who owned a condominium in the association to undergo an involuntary 72-hour psychiatric examination. After conducting a statutorily required ex parte screening investigation, which did not include an interview with the

woman in question, the superior court master determined that there was probable cause to believe that she was mentally ill and presented a likelihood of serious harm to others. The woman now appeals the evaluation order, claiming that the ex parte investigation violated due process and that the master failed to properly conduct the statutorily required screening investigation. Although this appeal is technically moot, we reach the merits of these claims under the public interest exception. We vacate the evaluation order because the superior court master failed to conduct the interview as part of the screening investigation required by statute; we do not reach the due process question.

## II.    FACTS AND PROCEEDINGS

On December 5, 2014, a petition was filed on behalf of the Seacliff Condominium Association (Seacliff) for an order requiring Heather R.,[1] the owner of a condominium in Seacliff, to undergo an involuntary 72-hour psychiatric evaluation pursuant to AS 47.30.700.[2] The petition alleged that Heather was a threat to "herself . . . and her neighbors" based on "[y]ears of confrontation, threats, aberrant and widely swinging behavior suggesting drug use," including "taking pictures inside people's houses, inability to have normal social interactions, [and] lying [in] wait to confront neighbors."

Later that day a magistrate judge, acting in the capacity of superior court master, held an ex parte evidentiary hearing on the issue of probable cause. The master heard testimony on Heather's behavior from Seacliff's property manager and four

---

[1]    We use a pseudonym to protect Heather's privacy.

[2]    *See* AS 47.30.700(a) (authorizing an ex parte order requiring respondent to undergo psychiatric evaluation if the court finds "probable cause to believe the respondent is mentally ill and that condition causes the respondent to be gravely disabled or to present a likelihood of serious harm to self or others"); AS 47.30.715 (limiting the time a respondent can be held for emergency evaluation to 72 hours).

Seacliff residents.  At the conclusion of the hearing, the master determined that there was probable cause to believe (1) Heather had a mental illness that was "negatively affecting her ability to control her actions" and (2) this presented "a likelihood of harm to other people."  The master recommended ordering involuntary hospitalization for a 72-hour psychiatric evaluation.  The superior court subsequently adopted the master's recommendation.  Heather was then taken to the Alaska Psychiatric Institute for evaluation, but she was discharged within 72 hours because medical personnel determined she did not meet the criteria for continued hospitalization or commitment.

Heather appeals the evaluation order.  She argues that the order violated due process under the U.S. and Alaska Constitutions and that the master failed to conduct a statutorily required screening investigation prior to issuing the order.

## III.   STANDARD OF REVIEW

This court applies its independent judgment to questions of law, which include mootness issues,[3] constitutional questions,[4] and statutory construction.[5]  When reviewing questions of law, this court adopts "the rule of law most persuasive in light of precedent, reason, and policy."[6]

---

[3]      *Clark v. State, Dep't of Corr.*, 156 P.3d 384, 386 (Alaska 2007).

[4]      *Garibay v. State, Dep't of Admin., Div. of Motor Vehicles*, 341 P.3d 446, 448 (Alaska 2014) (quoting *Alvarez v. State, Dep't of Admin., Div. of Motor Vehicles*, 249 P.3d 286, 290-91 (Alaska 2011)).

[5]      *Alaska Conservation Found. v. Pebble Ltd. P'ship*, 350 P.3d 273, 279 (Alaska 2015).

[6]      *Nunamta Aulukestai v. State, Dep't of Natural Res.*, 351 P.3d 1041, 1052 (Alaska 2015) (quoting *J.P. v. Anchorage Sch. Dist.*, 260 P.3d 285, 289 (Alaska 2011)) (internal quotation marks omitted).

## IV.  DISCUSSION

### A.  Although Heather's Appeal Is Now Moot, We Apply The Public Interest Exception To Reach The Merits Of Her Claims.

"A claim is moot if it is no longer a present, live controversy, and the party bringing the action would not be entitled to relief, even if it prevails."[7] Appeals from evaluation orders are moot after the commitment period has expired.[8] However, we will consider a moot claim "if it falls within the public interest exception to the mootness doctrine."[9]  We consider three factors in determining whether the public interest exception applies to an otherwise moot claim: "(1) whether the disputed issues are capable of repetition, (2) whether the mootness doctrine, if applied, may cause review of the issues to be repeatedly circumvented, and (3) whether the issues presented are so important to the public interest as to justify overriding the mootness doctrine."[10] No one individual factor is dispositive; "rather, we use our discretion to determine whether the public interest dictates that immediate review of a moot issue is appropriate."[11]

We recently applied the public interest exception to another due process claim arising from an ex parte 72-hour involuntary evaluation order.  In *In re Daniel G.* we concluded that all three factors considered in the public interest exception analysis

---

[7]  *Wetherhorn v. Alaska Psychiatric Inst.*, 156 P.3d 371, 380 (Alaska 2007) (quoting *Fairbanks Fire Fighters Ass'n, Local 1324 v. City of Fairbanks*, 48 P.3d 1165, 1167 (Alaska 2002)) (internal quotation marks omitted).

[8]  *Id*.

[9]  *Id*.

[10]  *Id*. at 380-81 (quoting *Akpik v. State, Office of Mgmt. & Budget*, 115 P.3d 532, 536 (Alaska 2005)) (internal quotation marks omitted).

[11]  *In re Daniel G.*, 320 P.3d 262, 267 (Alaska 2014) (quoting *Fairbanks Fire Fighters Ass'n*, 48 P.3d at 1168).

weighed in favor of reviewing the petitioner's claims.[12]  First, the disputed issues were capable of repetition because they did "not depend heavily on [the petitioner's] unique facts" and would "arise[] every time that an evaluation petition is filed under AS 47.30.710(b)."[13]  Second, "due process challenges to evaluation orders . . . will repeatedly circumvent review because the authorized 72-hour confinement period will have long since expired before an appeal can be heard."[14]  And third, "the scope and interpretation of the statutory provisions that allow the State to curtail the liberty of members of the public" were issues of significant importance to the public interest.[15]

All of these factors similarly favor review here, and Heather's statutory claim is sufficiently distinct from that in *Daniel G.* to warrant separate review.

> **B.    The Screening Investigation Statute Required The Master To Interview Heather If Reasonably Possible.**

Heather argues that the master violated AS 47.30.700 because he failed to conduct the required screening investigation before he issued the evaluation order.[16]  Because the

---

[12]    *Id*. at 267-68.

[13]    *Id*. at 268.  An evaluation petition filed under AS 47.30.710(b), contested in *In re Daniel G.*, is nearly identical to the petition under AS 47.30.700(a), contested here, except that the former must be sought by a mental health professional, while the latter can be sought by "any adult."  *Compare* AS 47.30.710(b) ("[T]he mental health professional shall apply for an ex parte order authorizing hospitalization for evaluation."), *with* AS 47.30.700(a) ("Upon petition of any adult," a judge may issue an ex parte order under qualifying circumstances).

[14]    *In re Daniel G.*, 320 P.3d at 268.

[15]    *Id*.

[16]    We recognize that "an issue raised for the first time in a reply brief is deemed to have been waived."  *Maines v. Kenworth Alaska, Inc.*, 155 P.3d 318, 326 (Alaska 2007).  However, while Heather did not explicitly argue until her reply brief that

(continued...)

master failed to interview Heather as part of the screening investigation, in the absence of any indication that it was not reasonably possible to do so, we agree that the master failed to properly conduct the screening investigation required by AS 47.30.700.[17]

Alaska Statute 47.30.700 requires a superior court to "conduct a screening investigation or direct a local mental health professional [to conduct such an investigation]" before it may issue an ex parte 72-hour involuntary evaluation order.[18] The statute defines "screening investigation" as

> the investigation and review of facts that have been alleged to warrant emergency examination or treatment, including interviews with the persons making the allegations, any other significant witnesses who can readily be contacted for interviews, and, *if possible, the respondent*, and an investigation and evaluation of the reliability and credibility of persons providing information or making allegations.[19]

---

[16]   (...continued)
the hearing did not meet the statutory definition of a screening investigation, we believe that she adequately preserved this issue for our review on appeal by raising a general challenge to the screening investigation in her initial brief. While she did not explain until her reply brief why the hearing should not be considered a screening investigation as defined by AS 47.30.915(19), her opening brief sufficiently stated her general claim that the master did not hold a screening investigation that conformed with statutory requirements. *Cf. id.* at 327 (holding that a claim raised very generally in the appellant's opening brief and then stated more precisely in the reply brief was not waived). Further, Heather's argument in her reply brief responds to the State's argument that "the facts of a particular case" dictate what is required for a proper "screening investigation."

[17]   Because we vacate the evaluation order on this basis, we do not address the other grounds that Heather raises in her brief for vacating the order.

[18]   AS 47.30.700(a).

[19]   AS 47.30.915(19) (emphasis added).

This definition implies that a screening investigation should omit an interview with the respondent only if such an interview would not be reasonably possible. For instance, such an interview may not be reasonably possible if the respondent is incapacitated or unwilling to be interviewed. However, there is no indication in the record before us that the master made any attempt to interview Heather or to request a mental health professional to conduct a screening interview.[20] Had the master made a finding that such an interview was not reasonably possible, our analysis likely would change. But the master violated AS 47.30.700 because the master failed to interview Heather without any indication that such an interview was not reasonably possible.

Further, this failure to interview Heather as part of the screening investigation was not harmless error.[21] The evidence presented to the master at the hearing was at best only minimally sufficient to support the master's probable cause finding. The master found that the testimony about Heather's bizarre behavior was sufficient to suggest that she suffered from mental illness. But there was no evidence or testimony offered at the hearing from anyone qualified to make a mental health diagnosis. The master also found that Heather's illness presented a likelihood of serious harm to others, "particularly through an instrumentality that she controls, namely a dog." But the evidence that she had threatened others with her dog was largely equivocal[22] or

---

[20]     In this case, the master could have satisfied the statute by providing notice of the hearing to Heather and allowing her to appear and testify.

[21]     *See* Alaska R. Civ. P. 61; *see also Wyatt v. State*, 981 P.2d 109, 112 (Alaska 1999) ("If the trial court erred in its ruling, we then determine whether the error was harmless.").

[22]     The concerns about Heather's ability to control her dog appear to stem
(continued...)

stale.[23] As a result, it is likely that the master's failure to conduct an interview with Heather as part of the statutorily required screening investigation had a prejudicial effect on the outcome of the hearing.[24]

In addition we note that the statute requires the superior court, as part of the screening investigation, to "evaluat[e] . . . the reliability and credibility of persons providing information or making allegations."[25] This evaluation is especially important in cases such as Heather's, in which the persons alleging mental illness and dangerousness are interested parties with only a layperson's knowledge rather than impartial mental health professionals. When petitions for evaluation orders are brought by lay people, the superior court can demonstrate that it has conducted this evaluation by explicitly making reliability and credibility findings as to the witnesses at the hearing. Similar findings are required in the criminal context when warrants are issued based on

---

[22]    (...continued)
primarily from Heather's physical strength, not her mental health. For example, one witness testified: "[I]t's a German Shepherd[.] It's a healthy animal. And she's not healthy enough to control it." Another observed: "The dog is in a hurry to go to the bathroom [and] kind of pulls on her. . . . She starts turning into the wall and pretty soon . . . she falls head over heels all the way to the landing. And I know it hurt her." Similarly, another witness expressed concern that Heather was "going to get hurt just by the number of times that she's falling down[] being dragged by the dog." Finally, another noted that Seacliff owners had complained "about the dog and the rope and that she doesn't have control over it."

[23]    One witness testified, for example, that Heather threatened a neighbor with her dog "a couple of years ago."

[24]    *See, e.g.*, *Klawock Heenya Corp. v. Dawson Constr./Hank's Excavation*, 778 P.2d 219, 220 (Alaska 1989) (holding that superior court's exclusion of evidence was not harmless error because the other evidence was "flimsy at best").

[25]    AS 47.30.915(19).

information from confidential informants[26] and similarly could bolster the reliability of a screening investigation.

## V.    CONCLUSION

For the foregoing reasons, we REVERSE AND VACATE the superior court's order authorizing hospitalization for evaluation.

---

**26**    *See State v. Jones*, 706 P.2d 317, 326 (Alaska 1985) ("It is imperative under the Alaska Constitution that the magistrate be presented with adequate supporting facts so that he can independently test the confidential informant's basis of knowledge and veracity. Only if these requirements are met can a reviewing court be certain that the magistrate has fulfilled his constitutional duty to render an independent determination that probable cause exists." (footnote and internal quotation marks omitted)).