*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| In the Matter of the Necessity for the Hospitalization of | ) ) ) | Supreme Court No. S-16834 |
| PAIGE M. | ) ) | Superior Court No. 1SI-16-00074 PR |
| | ) ) ) ) | O P I N I O N |
| | ) | No. 7324 – December 21, 2018 |

Appeal from the Superior Court of the State of Alaska, First Judicial District, Sitka, Leonard Devaney, Judge pro tem.

Appearances: Michael Jude Pate and Rachel E. Cella, Assistant Public Defenders, and Quinlan Steiner, Public Defender, Anchorage, for Paige M. Anna Jay, Assistant Attorney General, Anchorage, and Jahna Lindemuth, Attorney General, Juneau, for State of Alaska and Department of Health and Social Services.

Before: Bolger, Chief Justice, Winfree, Stowers, Maassen, and Carney, Justices.

BOLGER, Chief Justice.

## I. INTRODUCTION

A psychologist at a mental health clinic petitioned to have a patient involuntarily hospitalized. The superior court held a hearing on the petition at which only the psychologist gave substantive testimony. The court granted the petition, and the patient was hospitalized. The patient now appeals the court's denial of her motion to

vacate the involuntary hospitalization order. Because the superior court failed to conduct a screening investigation that met statutory requirements, and because this failure was not harmless error, we reverse the superior court's denial of the patient's motion to vacate.

## II.    FACTS AND PROCEEDINGS

In November 2016 a psychologist at Neurobehavioral Consultants, LLC filed a "Petition for Order Authorizing Hospitalization" of Paige M.,[1] an individual the clinic had been treating for approximately one year.[2] The psychologist indicated on the petition form that she had interviewed Paige one week prior. The psychologist also indicated that she believed Paige was mentally ill and "gravely disabled or likely to cause serious harm to []herself or others" as a result of her mental illness.[3] The psychologist explained that "[t]he risk(s) of self-neglect and self-harm are discussed in detail" in clinic notes she had attached to the petition and alleged that "[m]ost recently, [Paige] admitted needing 'safety checks' by S[itka] P[olice] D[epartment], due to medical and suicidal concerns, then hung a note on her door, refusing to answer the door for [the police]."

The Sitka superior court held a hearing on the petition that evening. The only people in attendance were the psychologist and a representative of Sitka Counseling and Prevention Services (SCPS), which arranges for transportation and coordination with

---

[1]    We use a pseudonym to protect Paige's privacy.

[2]    Alaska Statute 47.30.700 provides that "any adult" may file a petition for a person's involuntary hospitalization and articulates procedures to be followed after such a petition is filed.

[3]    *See* AS 47.30.700(b) ("The petition . . . must allege that the respondent is reasonably believed to present a likelihood of serious harm to self or others or is gravely disabled as a result of mental illness and must specify the factual information on which that belief is based.").

hospitals after a hospitalization petition is granted. The court confirmed that the SCPS representative had no additional information related to the petition and conducted a voir dire examination of the psychologist, who testified to Paige's behavior over the last month. The court observed that although it was "clear that [Paige] has many mental health diagnoses," the court "wasn't getting the information [it] felt like [it] needed" to make a finding necessary to grant the petition.[4] The court accordingly requested "a little bit more information about whether . . . in [the psychologist's] opinion [Paige was] likely to cause serious harm to herself right now."

The psychologist replied that there were multiple reasons for believing Paige was likely to cause serious harm to herself; one was Paige's "very recent lack of compliance in her own treatment plan and self-care," which the psychologist stated was particularly significant in light of Paige's ailments, including her propensity to suddenly lose consciousness. The psychologist added that Paige's conduct four days prior, when she arrived at the clinic and then abruptly left, was especially concerning "knowing that she's been suicidal, that she's been actively entertaining the thought of suicide, [and] that she has a history of doing this with several different means available to her." The court questioned the psychologist whether Paige would have persisted in this "state of mind" if the psychologist had seen her over the weekend, but the psychologist was unable to answer the question. The court also asked if Paige had a legal guardian who could check in on her, but the psychologist said that she did not and that she was also "estranged from her nuclear family" and "[v]ery isolated." Ultimately the court asked the psychologist: "Based on your education, training, and experience, . . . [and] given all these warning

---

[4] *Cf.* AS 47.30.700(a) (stating that if certain conditions are met, "a judge may issue an ex parte order orally or in writing, stating that there is probable cause to believe the respondent is mentally ill and that condition causes the respondent to be gravely disabled or to present a likelihood of serious harm to self or others").

signs and the decompensation that you're seeing, do you believe that [Paige is] likely to cause serious harm to herself?" When the psychologist replied in the affirmative, the court stated that it would grant the order.

That evening the court issued an order authorizing Paige's hospitalization under AS 47.30.700. The court found that there was probable cause to believe that Paige was mentally ill, that she was likely to cause serious harm to herself, and that she was gravely disabled.[5] The court also indicated that Paige had been interviewed by the psychologist "in regard to the petition" one week earlier. The same evening Sitka police removed Paige from her home and placed her in a jail cell overnight. The following day she was transported from Sitka to the Alaska Psychiatric Institute in Anchorage, where she was hospitalized from November 2 to November 7.[6]

On November 30 Paige filed a motion to vacate the order authorizing her hospitalization. She argued that the superior court had violated AS 47.30.700 by failing to interview her after the petition was filed, that her due process rights had been violated, and that the evidence presented to the court could not support the findings needed to order involuntary hospitalization. After two hearings in April and June 2017, the court issued an order denying Paige's motion to vacate in July 2017. In rejecting Paige's arguments, the court acknowledged AS 47.30.700's screening investigation requirement but asserted that petitions filed by mental health professionals "are usually complete and

---

[5]     *See* AS 47.30.700(a).

[6]     It is not clear why Paige was hospitalized for longer than 72 hours without a second commitment hearing. *See* AS 47.30.715 ("When a facility receives a proper order for evaluation, it shall accept the order and the respondent for an evaluation period not to exceed 72 hours. . . . The court shall set a date, time, and place for a 30-day commitment hearing, to be held if needed within 72 hours after the respondent's arrival."); AS 47.30.725 (describing respondents' rights and respondent-notification requirements for involuntary detention under, among other statutes, AS 47.30.700).

contain the essence of the screening investigation." The court concluded that neither AS 47.30.700 nor due process principles had been violated, and that testimony from the psychologist provided sufficient evidence to support the court's probable cause finding. Paige moved for reconsideration and for an opportunity to supplement the record; this motion was also denied. Paige appeals the denial of both her motion to vacate and her motion to supplement the record.

## III.   DISCUSSION

Paige's central arguments for reversal on appeal are:  (1) that the superior court violated AS 47.30.700 and (2) that the court erred by concluding there was probable cause to order temporary hospitalization.[7]  In the alternative Paige argues that the case should be remanded with instructions that the trial court permit her to supplement the record.  We reverse the superior court's denial of Paige's motion to vacate and thus do not address Paige's alternative argument.  And because we reverse on statutory grounds, we also do not address her probable cause arguments.

Paige argues that the trial court violated AS 47.30.700 by not ensuring that a full screening investigation was conducted before it issued the order for her involuntary hospitalization.  We agree.  Alaska law provides two avenues for initiating involuntary hospitalization for a mental health evaluation — one for emergency situations and one for non-emergency circumstances.  The emergency detention statute, AS 47.30.705,

---

[7]     In her reply brief and at oral argument, Paige argued that the procedures followed in her case violated her right to due process.  Because our decision rests on statutory grounds, it is not necessary to consider either the merits of this argument or whether it was waived for insufficient briefing.  *See In re Hospitalization of Heather R.*, 366 P.3d 530, 533 n.17 (Alaska 2016) (vacating an evaluation order on statutory basis and therefore declining to address appellant's due process argument).  We also note that although we have stated that "[a]ppeals from evaluation orders are moot after the commitment period has expired," the parties did not raise the issue in their briefs, and thus we do not address it here.  *Id.* at 532.

authorizes a peace officer or a mental health professional granted authority by the statute to "cause [a respondent] to be taken into custody" without first petitioning a court. But the person who initiates this emergency procedure must have "probable cause to believe that [the respondent] is gravely disabled or is suffering from mental illness and is likely to cause serious harm to self or others of such immediate nature that considerations of safety do not allow initiation of involuntary commitment procedures."[8] In this case Paige was not in custody when the petition for her involuntary hospitalization was filed, so the emergency detention statute did not apply.

Alaska Statute 47.30.700 provides the second, non-emergency, avenue to initiate involuntary hospitalization for a mental health evaluation. It allows any adult to petition for involuntary hospitalization:

> Upon petition of any adult, a judge shall immediately conduct a screening investigation or direct a local mental health professional . . . to conduct a screening investigation of the person alleged to be mentally ill and, as a result of that condition, alleged to be gravely disabled or to present a likelihood of serious harm to self or others. Within 48 hours after the completion of the screening investigation, a judge may issue an ex parte order orally or in writing, stating that there is probable cause to believe the respondent is mentally ill and that condition causes the respondent to be gravely disabled or to present a likelihood of serious harm to self or others.[9]

The statute identifies three key events that must occur before an individual may be involuntarily hospitalized. First an adult must petition a superior court for the respondent's involuntary hospitalization. Second a judge or mental health professional must conduct a screening investigation to evaluate the allegations in the petition. Third

---

[8]    AS 47.30.705.

[9]    AS 47.30.700(a).

the court must find probable cause that the respondent is mentally ill and that this mental illness causes the respondent to be gravely disabled or to present a likelihood of serious harm to self or others. Only then may a judge issue an ex parte order for the respondent's involuntary hospitalization.

Applying AS 47.30.700, the non-emergency statute, to this case, the court conducted an inadequate screening investigation in violation of that statute when, absent a finding that a post-petition interview was not reasonably possible, it did not require Paige to be interviewed as part of the investigation. Because this was not harmless error, we reverse.

## A. The Screening Investigation Statute Required A Post-Petition Interview With Paige If Reasonably Possible.

We first interpreted the "screening investigation" language of AS 47.30.700 in *In re Hospitalization of Heather R.*[10] In that case a patient appealed her hospitalization order, arguing that the court had violated AS 47.30.700 by failing to conduct a complete screening investigation before issuing the order.[11] The court's screening investigation had included neither an interview with the patient nor any attempt to ensure an interview was conducted.[12] Relying on the language of AS 47.30.700 and AS 47.30.915, we held that "a screening investigation should omit an interview with the respondent only if such an interview would not be reasonably possible" and vacated the order authorizing the hospitalization.[13] *In re Heather R.* confirms that a screening investigation should, if reasonably possible, include an interview with the respondent.

---

[10] 366 P.3d 530 (Alaska 2016).

[11] *Id.* at 533.

[12] *Id.*

[13] *Id.*

Paige contends that the superior court's hearing did not comply with the screening investigation requirement of AS 47.30.700 because it included neither an interview with her nor a finding that such an interview was not reasonably possible. The State contends that the superior court satisfied the statutory requirements by relying on the psychologist's petition, which it argues contained the equivalent of a screening investigation conducted by a mental health professional, including a respondent interview — the psychologist's earlier conversation with Paige. The State further argues that the superior court was not required to conduct or direct a second investigation after establishing that the psychologist's petition constituted the functional equivalent of a screening investigation.

Ultimately at issue is whether, absent a finding that a post-petition respondent interview is not reasonably possible, AS 47.30.700's screening investigation requirement can be satisfied with a *pre*-petition respondent interview. This is a question of statutory construction — a question of law to which "[t]his court applies its independent judgment."[14] "When reviewing questions of law, this court adopts 'the rule of law most persuasive in light of precedent, reason, and policy.' "[15]

"Interpretation of a statute begins with its text,"[16] and the plain text of the two implicated statutes — AS 47.30.700 and AS 47.30.915(19) — indicates that a screening investigation must include, if possible, a post-petition interview with the respondent. The most natural reading of the phrase "[u]pon the petition" in

---

[14] *Id.* at 531-32 (citing *Alaska Conservation Found. v. Pebble Ltd. P'ship*, 350 P.3d 273, 279 (Alaska 2015)).

[15] *Id.* at 532 (quoting *Nunamta Aulukestai v. State, Dep't of Nat. Res.*, 351 P.3d 1041, 1052 (Alaska 2015)).

[16] *City of Valdez v. State*, 372 P.3d 240, 249 (Alaska 2016) (citing *City of Kenai v. Friends of the Recreation Ctr., Inc.*, 129 P.3d 452, 458-59 (Alaska 2006)).

AS 47.30.700 suggests that the filing of a petition triggers the judge's initiation of the screening investigation; thus the filing of a petition necessarily precedes an investigation.[17] Furthermore AS 47.30.915 defines a "screening investigation" as "the investigation and review of facts that *have been alleged* to warrant emergency examination or treatment."[18] This wording further indicates that the screening investigation should occur after the petition has been filed.

Alaska Statute 47.30.915 lists the components of a screening investigation, one of which is an "interview[] with . . . , if possible, the respondent."[19] This language indicates that a screening investigation *should* include an interview in all instances in which it is possible to conduct one.[20]

Taken together the two statutes indicate that: (1) the required screening investigation should take place after a petition has been filed, and (2) the screening investigation should, if possible, include an interview with the respondent. Accordingly the statutory language supports Paige's assertion that a court violates AS 47.30.700 when it neither ensures that a post-petition interview with the respondent is conducted nor attempts to determine whether conducting such an interview would be reasonably possible.

---

[17] *See Gov't Emps. Ins. Co. v. Graham-Gonzalez*, 107 P.3d 279, 284 (Alaska 2005) ("In assessing statutory language, 'unless words have acquired a peculiar meaning, by virtue of statutory definition or judicial construction, they are to be construed in accordance with their common usage.' " (quoting *Muller v. BP Expl. (Alaska) Inc.*, 923 P.2d 783, 788 (Alaska 1996))).

[18] AS 47.30.915(19) (emphasis added).

[19] *Id.*

[20] *See In re Heather R.*, 366 P.3d at 533.

The State characterizes Paige's textual interpretation as "overly formalistic and . . . not necessary to ensure fidelity to the statute's purpose." It is true that when interpreting statutes, we seek "to give effect to the legislature's intent, with due regard for the meaning the statutory language conveys to others."[21] We have "rejected a mechanical application of the plain meaning rule in matters of statutory interpretation,"[22] instead " 'adopt[ing] a sliding scale approach,' under which '[t]he plainer the statutory language is, the more convincing the evidence of contrary legislative purpose or intent must be.' "[23] But the statutory language is clear in this case, and we see no indication of legislative purpose or intent compelling enough to depart from it.

The overall statutory scheme supports our reading.[24] It provides two avenues to initiate involuntary hospitalization for a mental health evaluation. In AS 47.30.705, the emergency detention avenue, the legislature provided a method for circumventing the screening investigation when necessary. This supports strict adherence to the screening investigation requirement set forth in AS 47.30.700, the non-emergency detention avenue; we need not read emergency procedures into the text of AS 47.30.700 when the legislature has already accounted for them elsewhere.

---

[21] *Graham-Gonzalez*, 107 P.3d at 284 (quoting *Muller*, 923 P.2d at 787).

[22] *Id.* (quoting *Muller*, 923 P.3d at 787).

[23] *City of Kenai v. Friends of the Recreation Ctr., Inc.*, 129 P.3d 452, 459 (Alaska 2006) (second alteration in original) (quoting *Graham-Gonzalez*, 107 P.3d at 284).

[24] We sometimes consider the overall statutory scheme when interpreting specific language. *See City of Valdez v. State*, 372 P.3d 240, 249-51, 252-53 (Alaska 2016).

Policy considerations also do not counsel a more permissive reading of AS 47.30.700.[25] The State argues that requiring post-petition interviews where reasonably possible "place[s] unwarranted demands on judicial resources." But we are not convinced. The cost associated with post-petition interviews is minimal — in this case the court could have conducted a satisfactory interview simply by inviting Paige to attend and testify at the hearing.[26] And the efforts a court must make to conduct an interview are not so extensive as to place a serious demand on judicial resources.[27] Moreover requiring post-petition interviews can reduce needless waste when the interview reveals that involuntary hospitalization is not necessary. And while it may seem wasteful or unnecessary to conduct a post-petition interview in some instances (for example where a pre-petition interview takes place the same day that a petition is filed), this downside is outweighed by the benefits of a bright-line rule requiring a post-petition interview where reasonably possible. Such a bright-line rule eliminates uncertainty about how recent a satisfactory interview must be, provides a check to ensure that the information from the interview is recent enough to be relevant, and preserves the screening investigation as a tool for evaluating the allegations of a petition at the time of its filing.

Accordingly we hold that after a court is petitioned to involuntarily

---

[25] We have also looked to policy considerations to assist our interpretation of statutory language. *See id.* at 252-53.

[26] *See In re Hospitalization of Heather R.*, 366 P.3d 530, 533 n.20 (Alaska 2016) ("In this case, the master could have satisfied the statute by providing notice of the hearing to Heather and allowing her to appear and testify.").

[27] We observed in *In re Heather R.* for example, that it may not be reasonably possible to obtain an interview if the respondent is incapacitated or unwilling to be interviewed — situations where the burden on the court to obtain an interview could indeed prove significant. *See id.* at 533.

hospitalize a respondent under AS 47.30.700, the court must either itself conduct a screening investigation or appoint a local mental health professional to do so. This screening investigation must include post-petition interviews with the person(s) making the allegations, any other significant witnesses, and if reasonably possible, the respondent.[28] In Paige's case the court did not appoint a mental health professional to conduct an investigation. And no one from the court tried to contact Paige to conduct a post-petition respondent interview. Without a finding that such an interview was not reasonably possible, Paige's brief contact with the clinic several days before her involuntary hospitalization was not adequate to satisfy the screening investigation requirement.

**B.      The Failure To Conduct An Adequate Screening Investigation Was Not Harmless Error.**

If a trial court errs, we then determine whether the error was harmless.[29] When there is minimal evidence for a ruling and the court's error involves exclusion of pertinent evidence, we have held that the error was likely prejudicial and not harmless.[30]

---

[28]      AS 47.30.915(19); *In re Heather R.*, 366 P.3d at 533.

[29]      Alaska R. Civ. P. 61 ("[N]o error or defect in any ruling or order or in anything done or omitted by the court . . . is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice."); *see also, e.g.*, *Solomon v. Solomon*, 420 P.3d 1234, 1242-43 (Alaska 2018) (conducting harmless error analysis before vacating the superior court's domestic violence determination for failure to make adequate findings).

[30]      *See, e.g.*, *In re Heather R.*, 366 P.3d at 533-34; *Klawock Heenya Corp. v. Dawson Constr./Hank's Excavation*, 778 P.2d 219, 220-21 (Alaska 1989) (holding that superior court's exclusion of evidence was not harmless error because the other evidence was "flimsy at best").

In this case the evidence supporting the court's findings was weak; the court's failure to require a current interview of Paige therefore was not harmless error.

First there was little support for the superior court's finding that Paige was "gravely disabled." Alaska Statute 47.30.915(9) defines a gravely disabled person as a person who is either (a) "in danger of physical harm arising from such complete neglect of . . . personal safety as to render serious accident, illness, or death highly probable"[31] or (b) in danger of "severe and abnormal mental, emotional, or physical distress."[32] But the court made no factual finding that Paige's noncompliance with her treatment plan made it highly probable that serious harm would result from her alleged "history of passing out" — the only condition with which she was diagnosed that could plausibly support a conclusion she was in danger of "physical harm." Moreover Paige in no way exhibited the level of "distress" we have associated with the definition of "gravely disabled" in AS 47.30.915(9)(B)[33] — Paige previously had stated that she avoided treatment because of a toothache and she had made affirmative efforts to address her personal safety, scheduling medical and dental appointments for the week following the petition. At the November 1 hearing, the court acknowledged that Paige might be fine, expressing "concern [that] she's at home, she has a toothache, she just doesn't want to answer the door, but she's feeling great." Had Paige been interviewed after the petition was filed, this concern could have been addressed.

---

[31] AS 47.30.915(9)(A).

[32] AS 47.30.915(9)(B).

[33] *See Wetherhorn v. Alaska Psychiatric Inst.*, 156 P.3d 371, 378 (Alaska 2007) (construing "distress" as "a level of incapacity that prevents the person in question from being able to live safely outside of a controlled environment").

There was also little support for the superior court's finding that Paige was likely to cause serious harm to herself within the statutory definition.[34] There was no evidence indicating that she had recently "caused" or "attempted" such harm, and the evidence the State relies on to show that she had "threatened" such harm is ambiguous. The State contends that Paige's alleged "chronic and recent" suicidal ideation in the preceding days leading up to November 1, along with her self-acknowledged tendency to isolate herself when experiencing mental health crises, meant that her withdrawal from treatment on November 1 "signaled an increased threat of suicidal behavior." While this evidence may support a finding that Paige experienced suicidal ideation, it does not clearly establish that she threatened self-harm, as the statute required.

The marginal evidence supporting the superior court's probable cause findings thus establishes that the failure to conduct a post-petition interview with Paige "had a prejudicial effect on the outcome of the hearing."[35]

## IV.   CONCLUSION

We therefore REVERSE the superior court's decision denying Paige's motion to vacate her hospitalization order.

---

[34]   *See* AS 47.30.915(12)(A) (defining one who is "likely to cause serious harm" as a person who "poses a substantial risk of bodily harm to that person's self, as manifested by recent behavior causing, attempting, or threatening that harm").

[35]   *In re Heather R.*, 366 P.3d at 534.