NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| In the Matter of the Necessity for the Hospitalization of | ) )  Supreme Court Nos. S-17022/17122 |
| | ) |
| GABRIELLA B. | )  Superior Court No. 3AN-18-00385 PR |
| | ) |
| | )  <u>MEMORANDUM OPINION</u> |
| | )      <u>AND JUDGMENT</u>* |
| | ) |
| | )  No. 1730 – July 3, 2019 |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Yvonne Lamoureux, Judge.

Appearances: Jennifer K. Hohnstein, Assistant Public Advocate, and James Stinson, Public Advocate, Anchorage, for Gabriella B. Sharon Barr, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for Carrie B. Laura F. Fox, Assistant Attorney General, Anchorage, and Jahna Lindemuth, Attorney General, Juneau, for State of Alaska.

Before: Bolger, Chief Justice, Winfree, Stowers, Maassen, and Carney, Justices.

## I.    INTRODUCTION

The superior court authorized an Indian child's involuntary hospitalization for a mental health evaluation. The child was transported to Alaska Psychiatric Institute (API), where she was evaluated and released. The day of her release, her mother filed a motion asking the court to vacate the child's hospitalization order. The superior court

_____

* Entered under Alaska Appellate Rule 214.

dismissed the motion as moot. The child and her mother appeal the superior court's hospitalization order and its dismissal of the mother's motion. We review the hospitalization order under the public interest exception to the mootness doctrine, and we conclude that it violated Alaska's commitment statutes in a manner prejudicial to the child. Vacating the order on this ground, we do not reach the other issues raised in the child's and her mother's appeals.

## II.     FACTS AND PROCEEDINGS

Gabriella B. was born in 2000. Her mother is Carrie B.[1] Gabriella was adjudicated a child in need of aid (CINA) in an Indian Child Welfare Act (ICWA) case; the Native Village of Buckland tribal court (the Tribe) took jurisdiction of the case from the superior court in early 2017.[2]

In early 2018 Gabriella was receiving treatment at Maniilaq Health Center in Kotzebue for a range of diagnosed mental illnesses, including "borderline personality disorder," depression, and post-traumatic stress disorder. She had recently expressed suicidal thoughts and was prescribed psychotropic medications.

Christopher Dietrich, a physician's assistant serving on Gabriella's clinical team at Maniilaq, petitioned the Kotzebue superior court to authorize Gabriella's hospitalization for a mental health evaluation on February 1, 2018. Dietrich alleged that Gabriella had written a suicidal note at school the previous day. He indicated he had interviewed her on January 31 and that she was in custody for an emergency evaluation. He did not, however, attach a completed "Notice of Emergency Detention and Application for Evaluation," a form required when petitioning for the involuntary

---

[1]     We use pseudonyms to protect Gabriella's and her mother's privacy.

[2]     No. 2KB-16-00025 CN. Although we stayed the transfer of jurisdiction pending an appeal by the State, we allowed the transfer in fall 2017 after the State dropped its appeal.

hospitalization of someone who has been taken into custody. Elsewhere on the petition he stated that Gabriella was currently a "Maniilaq Hospital Inpatient." He noted that Gabriella was a minor and listed "Tribe of Buckland/Glenna Parish [sic] ICWA" as her guardian. He provided two phone numbers and a fax number for contacting this listed guardian.

A superior court master recommended granting Dietrich's petition later on February 1. There is no indication that anyone named in the petition was contacted before the master made this recommendation. On February 2 a superior court judge signed the order for Gabriella's hospitalization. After the court's close of business, the Tribe faxed the court, asserting tribal jurisdiction and requesting Gabriella's release. The next business day, the court ordered expedited briefing on the jurisdictional question raised by the Tribe's request.

In its briefing on the issue, the Tribe asserted that Gabriella had been taken by her older brother to Maniilaq Hospital without the Tribe's or Gabriella's parents' knowledge. The Tribe urged that this was inconsistent with the Tribe's jurisdiction over the child, which it had asserted in 2017 and had not relinquished.

Before the Kotzebue superior court ruled on the issue, Gabriella was transported to API and the Anchorage superior court took jurisdiction over her case. The Anchorage court held a status hearing on February 9 and scheduled a second hearing for February 12. The day of the second hearing, Gabriella's mother moved to vacate Gabriella's hospitalization order as inconsistent with the Tribe's jurisdiction. But the court dismissed the case at the hearing after the State's attorney represented that Gabriella had been released to a representative from the Tribe. The court declared Gabriella's mother's request moot. Gabriella and her mother filed these now-consolidated appeals.

## III. DISCUSSION

Gabriella and her mother challenge two of the superior court orders in this case: the order for hospitalization and the order declaring that the request to vacate the hospitalization order was moot. They argue that the public interest exception to the mootness doctrine applies to their motion to vacate. And they urge that the hospitalization order must be vacated because it violated Alaska law, ICWA, and due process.

We recently declared that the public interest exception to the mootness doctrine authorizes us to consider appeals of involuntary hospitalization orders on the merits.[3] We review Gabriella's hospitalization order under this exception. Concluding that the order violated Alaska's commitment statutes and that this error was not harmless, we vacate the order without reaching the other issues raised in Gabriella's and her mother's appeals.

Alaska law provides two avenues for initiating an individual's involuntary hospitalization for a mental health evaluation, one for emergency situations and the other for non-emergency circumstances.[4] Under the non-emergency avenue found in AS 47.30.700, any adult may petition a court for the involuntary hospitalization of a person alleged to be mentally ill.[5] Upon such petition the court must "immediately" conduct a screening investigation or order a mental health professional to conduct a screening, to determine whether there is probable cause that the individual is mentally

---

[3] *See In re Hospitalization of Naomi B.*, 435 P.3d 918, 930 n.60 (Alaska 2019).

[4] *See* AS 47.30.700, AS 47.30.705; *In re Hospitalization of Paige M.*, 433 P.3d 1182, 1185 (Alaska 2018).

[5] AS 47.30.700(a).

ill and gravely disabled or likely to cause serious harm to the individual or others as a result of this condition.[6] If the court makes such a finding, it may authorize the individual's involuntary hospitalization for a mental health evaluation.[7]

Alternatively, the emergency detention statute, AS 47.30.705, authorizes peace officers and certain mental health professionals to "cause [a] person to be taken into custody and delivered to the nearest evaluation facility" without a court order. People taken into such emergency custody must be evaluated by a mental health professional and a physician within 24 hours of arriving at the evaluation facility.[8] If the evaluation establishes that the person is mentally ill with a condition causing the person to be gravely disabled or to present a likelihood of serious harm to self or others, the mental health professional may hospitalize the person for an emergency evaluation.[9]

The superior court concluded that Gabriella was not in emergency custody when Dietrich petitioned for her hospitalization. Having made this determination, the court was required to follow the non-emergency procedures in AS 47.30.700. It needed to either conduct a screening investigation of the petition's allegations itself or direct a mental health professional to do so. The superior court failed to meet this statutory requirement.[10]

---

[6]     *Id.*

[7]     *Id.*

[8]     AS 47.30.710(a); *see also In re Hospitalization of Daniel G.*, 320 P.3d 262, 269 (Alaska 2014).

[9]     AS 47.30.710(b); *see also In re Daniel G.*, 320 P.3d at 269.

[10]     Whether the superior court met the requirements of the commitment statutes is a question of law we review de novo. *See In re Hospitalization of Jacob S.*, 384 P.3d 758, 764 (Alaska 2016).

A screening investigation "includ[es] interviews with the persons making the allegations, any other significant witnesses who can readily be contacted for interviews, and if possible, the respondent."[11] The superior court's hospitalization order indicates that the court considered only Dietrich's petition before authorizing Gabriella's involuntary hospitalization. There is no evidence that the court or a court-appointed mental health professional interviewed Dietrich, the person making the allegations. And the respondent interview cited by the court is a pre-petition interview from January 31 that is insufficient to satisfy the screening investigation requirement of AS 47.30.700.[12] Finally, although Dietrich's petition provided the names and contact information of Gabriella's therapist in Kotzebue and the Tribe's ICWA worker, arguably "significant witnesses who [could] readily be contacted for interviews," there is no sign that the court attempted to contact them.[13] In these ways, the superior court violated AS 47.30.700.

If a superior court errs, we disturb its judgment only if the error prejudiced the appellant.[14] Here, because the evidence supporting the court's finding that Gabriella was likely to cause harm to herself or others was limited, the superior court's failure to conduct a screening investigation was prejudicial.[15] Interviews with Dietrich and

---

[11] AS 47.30.915(19).

[12] *In re Hospitalization of Paige M.*, 433 P.3d 1182, 1188 (Alaska 2018).

[13] AS 47.30.915(19).

[14] *See, e.g.*, *Solomon v. Solomon*, 420 P.3d 1234, 1242-43 (Alaska 2018) (citing Alaska R. Civ. P. 61) (conducting harmless error analysis before vacating the superior court's domestic violence determination for failure to make adequate findings).

[15] *See, e.g.*, *In re Hospitalization of Heather R.*, 366 P.3d 530, 533-34 (Alaska 2016) (holding that a failure to interview Heather was prejudicial because evidence "was at best only minimally sufficient to support the master's probable cause finding");
(continued...)

Gabriella could have persuaded the court that involuntary hospitalization was not necessary.[16] The superior court's statutory violation was thus not harmless. We vacate its hospitalization order on this basis.[17]

## IV.  CONCLUSION

We VACATE the order for Gabriella's involuntary hospitalization.

---

[15]  (...continued)
*Klawock Heenya Corp. v. Dawson Constr./Hank's Excavation*, 778 P.2d 219, 220 (Alaska 1989) (holding that superior court's exclusion of evidence was not harmless error because evidence supporting verdict was "flimsy at best"). Gabriella also argues that the superior court lacked probable cause to believe she was likely to cause serious harm to herself or others. Because we decide the appeal on other statutory grounds, we need not address this related argument.

[16]  *Cf. In re Paige M.*, 433 P.3d at 1188-89 (concluding error not harmless when omitted interview could have addressed unanswered concerns of the court).

[17]  Deciding the appeal on this ground, we do not reach Gabriella's and her mother's ICWA, due process, or remaining statutory arguments.